**UNITED STATES ex rel. Brodie Byron DAVIS**

v.

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary.**

**Civ. A. No. 13644.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Aug. 19, 1971.

James D. Sparks, Jr., Anthony J. Bruscato, Monroe, La., for plaintiff.

Robert W. Kostelka, Dist. Atty., and Gilbert T. Brown, Asst. Dist. Atty., Fourth Judicial District, Monroe, La., for defendant.

## RULING

DAWKINS, Chief Judge.

Brodie B. Davis has applied here for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Davis was convicted of murder November 21, 1958, in the Fourth Judicial District Court, Ouachita Parish, Louisiana, and was sentenced to death February 6, 1959.

On appeal, the Louisiana Supreme Court affirmed the conviction and sentence, State v. Davis, 237 La. 577, 111 So.2d 778 (1959).

■ In 1960, applicant was formally declared insane. After being subsequently declared sane, applications for writs of habeas corpus were filed in the State Courts and denied.[1] Davis filed a habeas application in the United States District Court, Eastern District of Louisiana, which was transferred to this Court under 28 U.S.C. § 2241.

This Court has held two evidentiary hearings on the application. Delay in final disposition has been due to applicant's dismissal of his originally retained counsel on the morning of the date the matter first was set for hearing, his severe illness for an extended period (tuberculosis), and his attempt to prosecute this suit himself, which we determined he was unable to do because of his ignorance of law and particularly that of habeas corpus, especially in the field of Constitutional Law. His original counsel, after their dismissal, advised the Court that he wanted to re-try the case presented against him in the State Court.

Davis later retained, with the help of the Court, and has been represented by, his own able counsel throughout these proceedings. (He draws comparatively large monthly benefits from the Veterans Administration.)

Applicant contends he is being illegally and unconstitutionally detained at Louisiana State Penitentiary at Angola, Louisiana, and is entitled to relief upon five allegedly constitutional grounds:

1. Exclusion of prospective petit jurors because of conscientious or

---

1. State Court remedies have been exhausted with respect to only one of the five grounds alleged for relief. While normally in the interest of comity we would not consider those grounds not presented to the State Court, we do so here due to the extraordinary circumstances and the length of time since the original filing here. To require exhaustion in light of the evidentiary hearings already held would not further justice. We in no way, however, relax our usual stringent requirements for exhaustion of State Court remedies. See, e. g., Williams v. Henderson, 330 F.Supp. 795 (W.D.La., June 10, 1971).

religious scruples against capital punishment;

2. Failure of the State to provide him a complete trial transcript;

3. Unconstitutional arrest and search;

4. Unconstitutional composition of the Grand and Petit Juries which indicted and convicted him; and

5. Admission in evidence at his trial of allegedly involuntary confessions or inculpatory statements.

### 1. Petit Jury Selection

■ This Court, pending final disposition, *sua sponte,* when *Witherspoon, infra,* was decided, enjoined the State from executing the death sentence imposed by the State trial Court upon Davis, and ordered his removal from Death Row. At the time he was tried, prospective petit jurors were excluded for cause for having voiced general objection to the death penalty or having expressed conscientious or religious scruples against its infliction. We took judicial notice that this was then common, universal practice in State capital offense trials. This general pattern in jury selection in Louisiana when Davis was tried is evidenced by La.R.S. 15:352, subsequently replaced by La.Code Crim. P. art. 798, as amended.

We previously have examined application of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) in Louisiana in Ward v. Henderson, 317 F.Supp. 344 (W.D.La.1970), and need not reiterate that analysis here. We affirm the position taken in *Ward* by holding that a *Witherspoon* violation results only in invalidity of a death sentence and has no bearing on the question of guilt.

Accordingly, as noted, the writ of habeas corpus heretofore was granted in part enjoining the State, its officials, officers, and agents from executing Davis on the basis of his conviction at issue here and he was ordered removed from Death Row. This simply means, in effect, a judicial commutation to a life sentence.

### 2. Failure of State to Provide A Complete Transcript

It is undisputed that Davis requested but failed to obtain a full and complete transcript of the trial. Accepting all allegations in this respect as true, however, does not result in denial of any constitutional right and is not grounds for habeas relief.

■ Judge Wisdom, as organ for the Fifth Circuit has outlined and fully examined Louisiana's "Bills of Exception" practice in criminal cases and its method of transcribing criminal proceedings. See Mack v. Walker, 372 F.2d 170 (5th Cir. 1966), cert. den. 393 U.S. 1030, 89 S.Ct. 641, 21 L.Ed.2d 573 (1969), for a full discussion. *Mack* is closely analogous to this case. There is no evidence here that providing Davis only a partial record, covering bills of exception taken during this trial, resulted in a denial of constitutional rights. *Cf.* Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); United States ex rel. Weston v. Sigler, 308 F.2d 946 (5th Cir. 1962); Crosby v. Smith, 404 F.2d 876 (5th Cir. 1968).

We hold, therefore, that the State's failure to provide a full transcript in this case, as in *Mack,* did not result in any denial of constitutional rights and does not support habeas relief.

### 3. Arrest

■ Davis urges that his arrest was without probable cause, and, consequently, that the search incidental thereto which disclosed inculpatory evidence was illegal and unconstitutional. The facts developed at the hearings, however, reflect that the arrest was with probable cause—though warrantless.

Upon arrest, Davis was charged with burglary, vagrancy and parole violation. He was arrested in the vicinity of a grocery store which had been burglarized several days before. Significantly, Davis was known to the officers to be a bur-

glar. The officers had "staked out" the house where he apparently was staying in an attempt to question him about the burglary and the disappearance of the subsequently discovered murder victim. When approached by the officers, after apparently attempting to sneak out of the house, Davis ran.

We find there was probable cause for the arrest. A known burglar in the vicinity of a recently burglarized establishment, with no apparent means of support, who had been seen in company with the murder victim, and who, when approached by police officers, ran from them, we think would "warrant a man of reasonable caution in the belief" that a felony had been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L.Ed. 543 (1925).

Unlike the situation in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), upon which Davis heavily relies, the officers here knew he was a burglar and they knew he was in the vicinity of a recently committed burglary. When they approached Davis, they made no pretense of not being police officers; they approached him on a public street without guise, and there was no possibility of his construing the incident as an unauthorized entry as in Wong Sun. The situations are distinguishable.

■ Moreover, even assuming arguendo that the officers initially may have lacked probable cause for an arrest, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), teaches that "[a] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." When a person reasonably suspected of criminal behavior immediately runs from officers approaching him, as here, there can be little doubt that a reasonably prudent man

legally would have probable cause for an arrest. Merely to pose the opposite of that conclusion, i. e., that the officer must just let the man run away and dismiss the incident from his mind, shows how incredible is that proposition.

The arrest here having been made with probable cause, the search incident to it was lawful. Accordingly, we find no constitutional infirmity in the arrest and search.[2]

### 4. Composition of Grand and Petit Juries

■ Applicant has demonstrated that the grand jury and petit jury did not exactly represent a cross-section of the community. In general, the jury members were of a somewhat higher social, economic, and educational stature than the community median.

The intentional exclusion by a State of qualified persons from a grand or petit jury because of race or national origin has been held to be violative of equal protection of the laws. Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). The Supreme Court has not applied the equal protection clause to prohibit exclusion or inclusion on a jury for any reason other than race or national origin. See Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). It is well settled that the Constitution does not require proportional representation. Fay v. New York, supra; Hoyt v. Florida, supra; Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945).

In Brown v. Allen, supra, the Court summarized the appropriate scope of review of State jury selection classifications:

"* * * States should decide for themselves the quality of juries as

---

2. We have assumed arguendo application of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), but express no opinion as to whether Davis's case was still "pending" at the time of Mapp.

best fits their situation so long as the classifications have relation to the efficiency of the jurors and are equally administered.

"Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." Brown v. Allen, *supra,* 344 U.S. at 473–474, 73 S.Ct. at 416.

Here there is no evidence of systematic exclusion or inclusion or invidious discrimination of any kind. Accepting *arguendo* that the allegations are true with respect to the type of persons selected for jury service, we find here no deprivation of constitutional rights in the jury selection process and the State's composition of the Grand and Petit Juries in this case was not constitutionally infirm. It should be especially noted that Davis is Caucasian, as were the jurors.

*5. Involuntariness of Confessions Or Inculpatory Statements*

■ The State presented two oral inculpatory statements made by respondent, one to an Identification Officer, the other to the Chief Criminal Investigator.

The statement made to the Identification Officer was made while Davis was being fingerprinted. In almost casual conversation, the officer asked him why he ran when approached by the Police. Davis responded, "I didn't want to be caught in here when the old man's body come up." (The murdered man's body was found later in the Ouachita River.) The officer testified that Davis was very belligerent and strong-headed and that he was talking to him simply in an attempt to take his mind away from the fingerprinting process. The record does not reflect and there have been no specific allegations that this was anything

more than a spontaneous—in fact voluntary—utterance, in no way induced by custodial environment or the presence of police personnel.

A second oral statement given to the Chief Criminal Investigator arose while Davis was attempting to make a "deal" contingent upon his confession. In this conversation, instigated at Davis's request, he remarked, "I will tell you I did it. Isn't that enough?"

As with the first statement, after careful examination of the entire circumstances surrounding the making of the statements, we cannot conclude that these statements were induced, coerced, or otherwise involuntary. We do not base this finding merely on the non-retroactivity of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), but upon all the circumstances in which the statements were given. Applicant totally has failed to demonstrate that these statements were in any way involuntary.

## ORDER

Considering the foregoing, let the writ of habeas corpus issue insofar, and only insofar, as the State of Louisiana, its officials, officers, and agents are hereby permanently enjoined from carrying out the death sentence imposed on Brodie Byron Davis, February 6, 1959. Otherwise, the application is denied. A certificate of probable cause will not be issued by this Court.

However, in light of Davis's tubercular condition (he also has diabetes and a heart involvement), the fact that he has been incarcerated for some thirteen years—mostly on Death Row—we strongly recommend that his sentence be commuted by the State Pardon Board and Parole Board to the usual ten years and six months, which would entitle him to be released from custody at once.

It is so ordered.