407 U.S. 493 (1972)
PETERS
v.
KIFF, WARDEN.
No. 71-5078.
Supreme Court of United States.
Argued February 22, 1972.
Decided June 22, 1972.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT.
*494 Edward T. M. Garland argued the cause and filed a brief for petitioner.
Dorothy T. Beasley, Assistant Attorney General of Georgia, argued the cause for respondent. With her on the brief were Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, and Courtney Wilder Stanton and David L. G. King, Jr., Assistant Attorneys General.
Jack Greenberg, James M. Nabrit III, and Charles Stephen Ralston filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as amicus curiae, urging reversal.
MR. JUSTICE MARSHALL announced the judgment of the Court and an opinion in which MR. JUSTICE DOUGLAS and MR. JUSTICE STEWART join.
Petitioner alleges that Negroes were systematically excluded from the grand jury that indicted him and the petit jury that convicted him of burglary in the Superior Court of Muscogee County, Georgia. In consequence he contends that his conviction is invalid under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Because he is not himself a Negro, the respondent contends that he has not suffered any unconstitutional discrimination, and that his conviction must stand. On that ground, the Court of Appeals affirmed the denial of his petition for federal habeas corpus. 441 F. 2d 370 (CA5 1971).[1] We granted certiorari. 404 U. S. 964 (1971). We reverse.

*495 I
At the outset, we reject the contention that the only issue before this Court is petitioner's challenge to the composition of the grand jury that indicted him. The respondent argues that the challenge to the petit jury is not before us, because it fails to appear in the list of questions presented by the petition for certiorari. We do not regard that omission as controlling, however, in light of the fact that the two claims have been treated together at every stage of the proceedings below, they are treated together in the body of the petition for certiorari, and they are treated together in the brief filed by petitioner on the merits in this Court. Petitioner cannot fairly be said to have abandoned his challenge to the petit jury, and the State has had ample opportunity to respond to that challenge, having done so at length below.[2]
Moreover, in this case the principles governing the two claims are identical. First, it appears that the same selection process was used for both the grand jury and *496 the petit jury.[3] Consequently, the question whether jurors were in fact excluded on the basis of race will be answered the same way for both tribunals. Second, both the grand jury and the petit jury in this case must be measured solely by the general Fourteenth Amendment guarantees of due process and equal protection, and not by the specific constitutional provisions for the grand jury and the petit jury. For the Fifth Amendment right to a grand jury does not apply in a state prosecution. Hurtado v. California, 110 U. S. 516 (1884). And the Sixth Amendment right to a petit jury, made applicable to the States through the Due Process Clause of the Fourteenth Amendment in Duncan v. Louisiana, 391 U. S. 145 (1968), does not apply to state trials that took place before the decision in Duncan, as petitioner's trial did. De Stefano v. Woods, 392 U. S. 631 (1968). Accordingly, we turn now to the commands of equal protection and of due process.

II
This Court has never before considered a white defendant's challenge to the exclusion of Negroes from jury service.[4] The essence of petitioner's claim is this: *497 that the tribunals that indicted and convicted him were constituted in a manner that is prohibited by the Constitution and by statute; that the impact of that error on any individual trial is unascertainable; and that consequently any indictment or conviction returned by such tribunals must be set aside.[5]
There can be no doubt that, if petitioner's allegations are true, both tribunals involved in this case were illegally constituted. He alleges that Negroes were systematically excluded from both the grand jury and the petit jury. This Court has repeatedly held that the Constitution prohibits such selection practices, with respect to the grand jury,[6] the petit jury,[7] or both.[8] Moreover, Congress *498 has made it a crime for a public official to exclude anyone from a grand or petit jury on the basis of race, 18 U. S. C. § 243, and this Court upheld the statute, approving the congressional determination that such exclusion would violate the express prohibitions of the Equal Protection Clause. Ex parte Virginia, 100 U. S. 339 (1880). The crime, and the unconstitutional state action, occur whether the defendant is white or Negro, whether he is acquitted or convicted. In short, when a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim.
It is a separate question, however, whether petitioner is entitled to the relief he seeks on the basis of that constitutional violation. Respondent argues that even if the grand and petit juries were unconstitutionally selected, petitioner is not entitled to relief on that account because he has not shown how he was harmed by the error. It is argued that a Negro defendant's right to challenge the exclusion of Negroes from jury service rests on a presumption that a jury so constituted will be prejudiced against him; that no such presumption is available to a white defendant; and consequently that a white defendant must introduce affirmative evidence of actual harm in order to establish a basis for relief.
That argument takes too narrow a view of the kinds of harm that flow from discrimination in jury selection. The exclusion of Negroes from jury service, like the arbitrary exclusion of any other well-defined class of citizens, offends a number of related constitutional values.
In Strauder v. West Virginia, 100 U. S. 303, 308-309 (1880), this Court considered the question from the point *499 of view of the Negro defendant's right to equal protection of the laws. Strauder was part of a landmark trilogy of cases, in which this Court first dealt with the problem of racial discrimination in jury selection. In Strauder itself, a Negro defendant sought to remove his criminal trial to the federal courts, pursuant to statute, on the ground that Negroes were excluded by law from the grand and petit juries in the state courts; the Court upheld his claim. In Virginia v. Rives, 100 U. S. 313 (1880), a Negro defendant sought removal on the ground that there were in fact no Negroes in the venire from which his jury was drawn; the Court held that, without more, his claim did not come within the precise terms of the removal statute. Finally, in Ex parte Virginia, 100 U. S. 339 (1880), a state judge challenged the statute under which he was convicted for the federal crime of excluding Negroes from state grand and petit juries; the Court upheld the statute as a valid means of enforcing the Equal Protection Clause. Because each of these three cases was amenable to decision on the narrow basis of an analysis of the Negro defendant's right to equal protection, the Court brought all three under that single analytical umbrella.
But even in 1880 the Court recognized that other constitutional values were implicated. In Strauder, the Court observed that the exclusion of Negroes from jury service injures not only defendants, but also other members of the excluded class: it denies the class of potential jurors the "privilege of participating equally . . . in the administration of justice," 100 U. S., at 308, and it stigmatizes the whole class, even those who do not wish to participate, by declaring them unfit for jury service and thereby putting "a brand upon them, affixed by law, an assertion of their inferiority." Ibid. It is now clear that injunctive relief is available to vindicate these interests of the excluded jurors and the stigmatized class. *500 Carter v. Jury Commission of Greene County, 396 U. S. 320 (1970); Turner v. Fouche, 396 U. S. 346 (1970); White v. Crook, 251 F. Supp. 401 (MD Ala. 1966).
Moreover, the Court has also recognized that the exclusion of a discernible class from jury service injures not only those defendants who belong to the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross section of the community. In Williams v. Florida, 399 U. S. 78 (1970), we sought to delineate some of the essential features of the jury that is guaranteed, in certain circumstances, by the Sixth Amendment. We concluded that it comprehends, inter alia, "a fair possibility for obtaining a representative cross-section of the community." 399 U. S., at 100.[9] Thus if the Sixth Amendment were applicable here, and petitioner were challenging a post-Duncan petit jury, he would clearly have standing to challenge the systematic exclusion of any identifiable group from jury service.[10]
*501 The precise question in this case, then, is whether a State may subject a defendant to indictment and trial by grand and petit juries that are plainly illegal in their composition, and leave the defendant without recourse on the ground that he had in any event no right to a grand or petit jury at all. We conclude, for reasons that follow, that to do so denies the defendant due process of law.

III
"A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U. S. 133, 136 (1955). The due process right to a competent and impartial tribunal is quite separate from the right to any particular form of proceeding. Due process requires a competent and impartial tribunal in administrative hearings, Goldberg v. Kelly, 397 U. S. 254, 271 (1970), and in trials to a judge, Tumey v. Ohio, 273 U. S. 510 (1927). Similarly, if a State chooses, quite apart from constitutional compulsion, to use a grand or petit jury, due process imposes limitations on the composition of that jury.
Long before this Court held that the Constitution imposes the requirement of jury trial on the States, it was well established that the Due Process Clause protects a defendant from jurors who are actually incapable of rendering an impartial verdict, based on the evidence and the law. Thus a defendant cannot, consistent with due process, be subjected to trial by an insane juror, Jordan v. Massachusetts, 225 U. S. 167, 176 (1912), by jurors who are intimidated by the threat of mob violence, Moore v. Dempsey, 261 U. S. 86 (1923), or by jurors who *502 have formed a fixed opinion about the case from newspaper publicity, Irvin v. Dowd, 366 U. S. 717 (1961).
Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias. This rule, too, was well established long before the right to jury trial was made applicable in state trials, and does not depend on it. Thus it has been invoked in trials to a judge, e. g., Tumey v. Ohio, 273 U. S. 510 (1927); In re Murchison, 349 U. S. 133 (1955); Mayberry v. Pennsylvania, 400 U. S. 455 (1971); and in pre-Duncan state jury trials, e. g., Turner v. Louisiana, 379 U. S. 466 (1965); Estes v. Texas, 381 U. S. 532, 550 (1965). In Tumey v. Ohio, supra, this Court held that a judge could not, consistent with due process, try a case when he had a financial stake in the outcome, notwithstanding the possibility that he might resist the temptation to be influenced by that interest. And in Turner v. Louisiana, supra, the Court held that a jury could not, consistent with due process, try a case after it had been placed in the protective custody of the principal prosecution witnesses, notwithstanding the possibility that the jurors might not be influenced by the association. As this Court said in In re Murchison, supra, "[f]airness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." 349 U. S., at 136.
These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. *503 They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.
If it were possible to say with confidence that the risk of bias resulting from the arbitrary action involved here is confined to cases involving Negro defendants,[11] then perhaps the right to challenge the tribunal on that ground could be similarly confined. The case of the white defendant might then be thought to present a species of harmless error.
But the exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases. First, if we assume that the exclusion of Negroes affects the fairness of the jury only with respect to issues presenting a clear opportunity for the operation of race prejudice, that assumption does not provide a workable guide for decision in particular cases. For the opportunity to appeal to race prejudice is latent in a vast range of issues, cutting across the entire fabric of our society.
Moreover, we are unwilling to make the assumption that the exclusion of Negroes has relevance only for issues involving race. When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a *504 perspective on human events that may have unsuspected importance in any case that may be presented.[12]
It is in the nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce. For there is no way to determine what jury would have been selected under a constitutionally valid selection system, or how that jury would have decided the case. Consequently, it is necessary to decide on principle which side shall suffer the consequences of unavoidable uncertainty. See Speiser v. Randall, 357 U. S. 513, 525-526 (1958); In re Winship, 397 U. S. 358, 370-373 (1970) (Harlan, J., concurring). In light of the great potential for harm latent in an unconstitutional jury-selection system,[13] and the strong interest of the criminal defendant in avoiding that harm, any doubt should be resolved in favor of giving the opportunity for challenging the jury to too many defendants, rather than giving it to too few.
Accordingly, we hold that, whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law. This certainly is true in this case, where the claim is that Negroes were systematically excluded from jury service. *505 For Congress has made such exclusion a crime. 18 U. S. C. § 243.

IV
Having resolved the question of standing, we turn briefly to the further disposition of this case. There is, of course, no question here of justifying the system under attack. For whatever may be the law with regard to other exclusions from jury service, it is clear beyond all doubt that the exclusion of Negroes cannot pass constitutional muster. Accordingly, if petitioner's allegations are correct, and Negroes were systematically excluded from his grand and petit juries, then he was indicted and convicted by tribunals that fail to satisfy the elementary requirements of due process, and neither the indictment nor the conviction can stand. Since he was precluded from proving the facts alleged in support of his claim, the judgment must be reversed and the case remanded for further proceedings consistent with this opinion.
Reversed and remanded.
MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN and MR. JUSTICE POWELL join, concurring in the judgment.
Since March 1, 1875, the criminal laws of the United States have contained a proscription to the following effect:
"No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude . . . ."
By this unambiguous provision, now contained in 18 U. S. C. § 243, Congress put cases involving exclusions *506 from jury service on grounds of race in a class by themselves. "For us the majestic generalities of the Fourteenth Amendment are thus reduced to a concrete statutory command when cases involve race or color which is wanting in every other case of alleged discrimination." Fay v. New York, 332 U. S. 261, 282-283 (1947).
The consequence is that where jury commissioners disqualify citizens on the grounds of race, they fail "to perform their constitutional dutyrecognized by § 4 of the Civil Rights Act of March 1, 1875 . . . and fully established since the decision in 1881 of Neal v. Delaware. . . not to pursue a course of conduct in the administration of their office which would operate to discriminate in the selection of jurors on racial grounds." Hill v. Texas, 316 U. S. 400, 404 (1942). Thus, "no State is at liberty to impose upon one charged with crime a discrimination in its trial procedure which the Constitution, and an Act of Congress passed pursuant to the Constitution, alike forbid . . . . [I]t is our duty as well as the State's to see to it that throughout the procedure for bringing him to justice he shall enjoy the protection which the Constitution guarantees. Where, as in this case, timely objection has laid bare a discrimination in the selection of grand jurors, the conviction cannot stand, because the Constitution prohibits the procedure by which it was obtained." Id., at 406.
It is true that the defendant in Hill was a Negro and petitioner here is a white man. It is also true that there is no case in this Court setting aside a conviction for arbitrary exclusions of a class of citizens from jury service where the defendant was not a member of the excluded class. I also recognize that, as in this case, the courts of appeals reflecting the generally accepted constitutional view, have rejected claims such as petitioner presents here. For me, however, the rationale and operative language of Hill v. Texas suggest a broader *507 sweep; and I would implement the strong statutory policy of § 243, which reflects the central concern of the Fourteenth Amendment with racial discrimination, by permitting petitioner to challenge his conviction on the grounds that Negroes were arbitrarily excluded from the grand jury that indicted him. This is the better view, and it is time that we now recognized it in this case and as the standard governing criminal proceedings instituted hereafter. Hence, I join the judgment of the Court.
MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE BLACKMUN and MR. JUSTICE REHNQUIST join, dissenting.
There is no longer any question, of course, that persons may not be excluded from juries on account of race. Such exclusions are plainly unlawful and deserving of condemnation. That, however, is not the issue before us. The real issue is whether such illegality necessarily voids a criminal conviction, absent any demonstration of prejudice, or basis for presuming prejudice, to the accused.
Petitioner was indicted for the offense of burglary on June 6, 1966, and thereafter convicted. The conviction was reversed on direct appeal, and the case was remanded for a new trial. Petitioner was retried on December 8, 1966, was found guilty, and was sentenced to 10 years' imprisonment. Petitioner is not a Negro and the record in no way suggests that race was relevant in the proceedings against him. At trial, petitioner made no challenge to the method of selection of the grand and petit juries, and he made no challenge to the array of the petit jury. In his appeal to the Court of Appeals of Georgia, petitioner still made no claim addressed to the method of selection of the grand and petit juries. His conviction was affirmed.
*508 Seven months after his trial, petitioner filed a writ of habeas corpus in the United States District Court, asserting for the first time that Negroes were systematically excluded from the grand and petit juries. If petitioner's allegations are true, then the officials responsible for the jury selection acted in violation of the Constitution, denying potential Negro jurors the equal opportunity to participate in the administration of justice. Strauder v. West Virginia, 100 U. S. 303, 308 (1880). Moreover, if petitioner's allegations are true, the responsible officials are subject to criminal penalties. 18 U. S. C. § 243. However, in order for petitioner's conviction to be set aside, it is not enough to show merely that there has been some unconstitutional or unlawful action at the trial level. It must be established that petitioner's conviction has resulted from the denial of federally secured rights properly asserted by him. See Alderman v. United States, 394 U. S. 165, 171-174 (1969); cf. Jones v. United States, 362 U. S. 257, 261 (1960).
The opinions in support of the majority position do not hold that if petitioner's allegations are true, he has been denied the equal protection of the laws. The Court has held in a long line of cases that a Negro defendant is denied equal protection by the systematic exclusion of Negroes from jury service. See, e. g., Whitus v. Georgia, 385 U. S. 545 (1967); Avery v. Georgia, 345 U. S. 559 (1953); Norris v. Alabama, 294 U. S. 587 (1935); Carter v. Texas, 177 U. S. 442 (1900); Strauder v. West Virginia, 100 U. S. 303 (1880). These decisions have been predicated from the beginning on the judicially noticeable fact "that prejudices often exist against particular classes in the community, which sway the judgment of jurors, and which, therefore, operate in some cases to deny to persons of those classes the full enjoyment of that protection which others enjoy." *509 Strauder v. West Virginia, supra, at 309. See also Gibson v. Mississippi, 162 U. S. 565, 581 (1896); Bush v. Kentucky, 107 U. S. 110, 117 (1883); Neal v. Delaware, 103 U. S. 370, 386 (1881); Ex parte Virginia, 100 U. S. 339, 345 (1880). This presumption of prejudice derives from the fact that the defendant is a member of the excluded class, but the Court has never intimated that a defendant is the victim of unconstitutional discrimination if he does not claim that members of his own race have been excluded. See Alexander v. Louisiana, 405 U. S. 625, 633 (1972).
While the opinion of MR. JUSTICE MARSHALL refrains from relying on the Equal Protection Clause, it concludes that if petitioner's allegations are true, he has been denied due process of law. The opinion seeks to equate petitioner's position with that of a defendant who has been tried before a biased tribunal or one lacking the indicia of impartiality. It has been held that an accused is denied due process if the trier of fact is mentally incompetent, Jordan v. Massachusetts, 225 U. S. 167 (1912), has a personal interest in the outcome of the proceedings, Tumey v. Ohio, 273 U. S. 510 (1927), has been subjected to pressures making a dispassionate decision unlikely, Irvin v. Dowd, 366 U. S. 717 (1961), Moore v. Dempsey 261 U. S. 86 (1923), cf. Turner v. Louisiana, 379 U. S. 466 (1965), or has had direct personal involvement with the events underlying a criminal contempt charge. Mayberry v. Pennsylvania, 400 U. S. 455 (1971); In re Murchison, 349 U. S. 133 (1955). This case plainly falls in none of those categories.
Although the prior cases have not required a showing that the trier of fact was actually affected by prejudice in its deliberations, in every case the circumstances were such as to create a serious "probability of unfairness." In re Murchison, 349 U. S., at 136. Recognizing this limitation, the Court in Witherspoon v. Illinois, 391 *510 U. S. 510 (1968), found no denial of due process where the determination of guilt had been entrusted to a jury from which persons opposed to the death penalty had been excluded. The Court rejected as "tentative and fragmentary" scientific evidence tending to show "that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt." 391 U. S., at 517. The Court went on to state,
"We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." 391 U. S., at 517-518.
See also Fay v. New York, 332 U. S. 261, 280-281 (1947). Here three members of the Court would establish such a per se rule without the benefit of tentative, fragmentary, or any other kind of empirical data indicating that allwhite juries tend to be prejudiced against white defendants in nonracial criminal proceedings.
The opinion of MR. JUSTICE MARSHALL seeks to magnify this wholly speculative likelihood of prejudice by noting that the effect of excluding "any large and identifiable segment of the community . . . is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable," and "that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." Ante, at 503-504. I completely agree that juries should not be deprived of the insights of the various *511 segments of the community, for the "common-sense judgment of a jury," referred to in Duncan v. Louisiana, 391 U. S. 145, 156 (1968), is surely enriched when all voices can be heard. But we are not here concerned with the essential attributes of trial by jury. In fact, since petitioner was tried two years before this Court's decision in Duncan, there was no constitutional requirement that he be tried before a jury at all. DeStefano v. Woods, 392 U. S. 631 (1968). Had the State of Georgia proceeded to try petitioner before a judge, I assume the Court would not find it a denial of due process if the judge were not the embodiment of all the "qualities of human nature and varieties of human experience." I do not mean to minimize the importance of these values, but they really have very little to do with the narrow question whether petitioner was convicted by a prejudiced tribunal.
Nor do I believe that the illegality of the alleged exclusion can be viewed as tipping the scales toward finding a denial of due process. The question of a jury's bias or prejudice is totally factual in nature. If the possibility of prejudice is too remote or speculative to support a finding of unconstitutionality, a different result cannot be justified by relying on the element of illegality. The constitutional and statutory prohibition against such conduct is extraneous to the due process question, for it in no way renders the possibility of prejudice less remote or less speculative. If this were a borderline case on the facts, it might conceivably be appropriate to resolve the doubt against the State due to its complicity in the alleged unlawful discrimination. But, judging from all existing authority, this is not a close case at all.
The opinion of MR. JUSTICE WHITE concurring in the judgment, as I read it, rests on the statutory prohibition against racially exclusive juries found in 18 U. S. C. § 243. The opinion draws on dictum in Hill v. Texas, 316 U. S. *512 400, 404 (1942), a case involving a Negro defendant, as expressing the "better view" that § 243 invalidates the conviction of any man tried before a jury from which persons have been excluded on account of race.[*]
A closer look at the statute is warranted. From all indications, § 243 was intended to serve two purposes: first, to make explicit what was implicit in the Fourteenth Amendment, that persons cannot be denied the right to serve on juries because of their race; and second, to prevent racial exclusions from juries by providing criminal penalties for persons violating the statutory command. See Ex parte Virginia, 100 U. S. 339 (1880); Neal v. Delaware, 103 U. S. 370, 386 (1881). Insofar as the statute is declarative of rights secured by the Equal Protection Clause, it provides no authority for reaching a result that the Constitution itself does not require. No case has ever held that § 243 confers extra-constitutional rights on criminal defendants, and there is no support for the view that Congress intended to confer such rights when it enacted this legislation in 1875.
The opinion concurring in the judgment suggests that an expansive reading of § 243 is appropriate to "implement the strong statutory policy" against the exclusion *513 of persons from jury service on the basis of race. Under this interpretation, the statute is viewed not so much as safeguarding the rights of the white defendant, but as providing a prophylaxis against discriminatory action in all cases, regardless of any harm that might befall the accused. While Congress surely had the power to implement the policies of the Fourteenth Amendment in this manner, it chose instead to deter such violations of the Fourteenth Amendment by imposing criminal sanctions. It has been apparent, at least until recently, that such sanctions have not satisfactorily served to deter. But it is not for this Court to correct the inadequacies of a statutory enactment. Moreover, it does nothing to promote adherence to the policies of the Fourteenth Amendment to allow a criminal defendant who has made no objection at trial and who has no credible claim of personal prejudice to mount a post-conviction attack alleging that discriminatory jury selection has taken place in the past.
NOTES
[1] The history of this litigation is long and complicated. Petitioner was indicted on June 6, 1966. His first trial resulted in a conviction that was reversed on Fourth Amendment grounds, 114 Ga. App. 595, 152 S. E. 2d 647 (1966). A second trial, held on December 8, 1966, resulted in the conviction challenged here, which was affirmed, 115 Ga. App. 743, 156 S. E. 2d 195 (1967). Petitioner for the first time raised the claim of discriminatory jury selection in a petition for federal habeas corpus, which was summarily denied on July 5, 1967. The Court of Appeals affirmed on the ground that petitioner had failed to exhaust then-available state remedies with respect to his otherwise highly colorable claim, 397 F. 2d 731, 735-741 (CA5 1968). Petitioner then filed a second petition for federal habeas corpus on the same ground, alleging that intervening state court decisions clearly foreclosed his claim in the state courts. That petition was denied on the grounds (1) that it was repetitious, (2) that petitioner had failed to exhaust, and (3) that his claims were lacking in merit. App. 15. The Court of Appeals again affirmed, rejecting the first two grounds and resting entirely on the third, i. e., rejecting petitioner's substantive claims. 441 F. 2d 370 (1971). The exhaustion point thus having been resolved in petitioner's favor below, the State quite properly does not press it here.
[2] See Brief for Appellee in Court of Appeals 28-43.
[3] The jury lists were made up from the tax digests, which were by law segregated according to race; moreover, the jury lists contained a proportion of Negroes much smaller than the proportion in the population or in the tax digests. The jury-selection system of Muscogee County, Georgia, was explored in detail and struck down as unconstitutional in Vanleeward v. Rutledge, 369 F. 2d 584 (CA5 1966), contemporaneously with petitioner's trial. On petitioner's first federal appeal, the Court of Appeals suggested, though it did not hold, that the Vanleeward findings and conclusions on this point should be regarded as conclusive with respect to Peters, and thereby the expense and delay of a full evidentiary hearing might be avoided, 397 F. 2d, at 740.
[4] A number of state courts and lower federal courts have imposed a "same class" rule on challenges to discriminatory jury selection, holding that the exclusion of a class from jury service is subject to challenge only by a member of the excluded class. Only a few courts have rejected the rule; e. g., Allen v. State, 110 Ga. App. 56, 137 S. E. 2d 711 (1964) (not followed by other panels of same court); State v. Madison, 240 Md. 265, 213 A. 2d 880 (1965). The cases are collected, and criticized, in Note, The Defendant's Challenge to a Racial Criterion in Jury Selection, 74 Yale L. J. 919 (1965). See also Note, The Congress, The Court and Jury Selection, 52 Va. L. Rev. 1069 (1966). This Court avoided passing on the "same class" rule in Fay v. New York, 332 U. S. 261, 289-290 (1947), and has never since then approved or rejected it.
[5] He also claims his own rights under the Equal Protection Clause have been violated, a claim we need not consider in light of our disposition.
[6] Alexander v. Louisiana, 405 U. S. 625 (1972); Arnold v. North Carolina, 376 U. S. 773 (1964); Eubanks v. Louisiana, 356 U. S. 584 (1958); Reece v. Georgia, 350 U. S. 85 (1955); Cassell v. Texas, 339 U. S. 282 (1950); Hill v. Texas, 316 U. S. 400 (1942); Smith v. Texas, 311 U. S. 128 (1940); Pierre v. Louisiana, 306 U. S. 354 (1939); Rogers v. Alabama, 192 U. S. 226 (1904); Carter v. Texas, 177 U. S. 442 (1900); Bush v. Kentucky, 107 U. S. 110 (1883).
[7] Avery v. Georgia, 345 U. S. 559 (1953); Hollins v. Oklahoma, 295 U. S. 394 (1935).
[8] Sims v. Georgia, 389 U. S. 404 (1967); Jones v. Georgia, 389 U. S. 24 (1967); Whitus v. Georgia, 385 U. S. 545 (1967); Coleman v. Alabama, 377 U. S. 129 (1964); Patton v. Mississippi, 332 U. S. 463 (1947); Hale v. Kentucky, 303 U. S. 613 (1938); Norris v. Alabama, 294 U. S. 587 (1935); Martin v. Texas, 200 U. S. 316 (1906); Neal v. Delaware, 103 U. S. 370 (1881); Strauder v. West Virginia, 100 U. S. 303 (1880).
[9] The principle of the representative jury was first articulated by this Court as a requirement of equal protection, in cases vindicating the right of a Negro defendant to challenge the systematic exclusion of Negroes from his grand and petit juries. E. g., Smith v. Texas, 311 U. S. 128, 130 (1940). Subsequently, in the exercise of its supervisory power over federal courts, this Court extended the principle, to permit any defendant to challenge the arbitrary exclusion from jury service of his own or any other class. E. g., Glasser v. United States, 315 U. S. 60, 83-87 (1942); Thiel v. Southern Pacific Co., 328 U. S. 217, 220 (1946); Ballard v. United States, 329 U. S. 187 (1946). Finally it emerged as an aspect of the constitutional right to jury trial in Williams v. Florida, 399 U. S. 78, 100 (1970).
[10] It is of course a separate question whether his challenge would prevail, i. e., whether the exclusion might be found to have sufficient justification. See Rawlins v. Georgia, 201 U. S. 638, 640 (1906), holding that a State may exclude certain occupational categories from jury service "on the bona fide ground that it [is] for the good of the community that their regular work should not be interrupted." We have no occasion here to consider what interests might justify an exclusion, or what standard should be applied, since the only question in this case is not the validity of an exclusion but simply standing to challenge it.
[11] Or the class may be expanded slightly to include white civil rights workers, see Allen v. State, 110 Ga. App. 56, 62, 137 S. E. 2d 711, 715 (1964) (alternative holding).
[12] In rejecting, for the federal courts, the exclusion of women from jury service, this Court made the following observations, which are equally relevant to the exclusion of other discernible groups:

"The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded." Ballard v. United States, 329 U. S. 187, 193-194 (1946) (footnote omitted).
[13] Hill v. Texas, 316 U. S. 400, 406 (1942).
[*] The passage quoted from Hill v. Texas, supra, even if taken at face value, does not mandate reversal in this case. It is expressly limited to the case where "timely objection has laid bare a discrimination in the selection of grand jurors . . . ." 316 U. S., at 406. As indicated earlier, petitioner first made his allegations seven months after his trial. Moreover, assuming, arguendo, that there is a statutory right not to be tried before a racially exclusive jury, it is not clear to me why petitioner's failure to raise the matter in the state courts should not preclude him from raising it on a federal habeas attack. The Court has spoken of a presumption against the waiver of fundamental, constitutional rights, see, e. g., Johnson v. Zerbst, 304 U. S. 458, 464 (1938), but has never intimated that a similar presumption should apply with respect to statutory rights.