Edward I. Staten, Reinberger, Eilbott, Smith & Staten, Pine Bluff, Ark., John Wm. Murphy, Fayetteville, Ark., for petitioner.

Milton Lueken, Asst. Atty. Gen. of Ark., Little Rock, Ark., for respondent.

**William Archie MAYFIELD, Jr.,**
**Petitioner,**

v.

**Bill STEED, Acting Commissioner of the Department of Corrections, Respondent.**

**No. PB-71-C-44.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

July 19, 1972.

## MEMORANDUM OPINION

EISELE, District Judge.

This is a Petition for a Writ of Habeas Corpus. The petitioner, William Archie Mayfield, Jr., was convicted on December 10, 1969, of the crime of second degree murder. His conviction was appealed to the Arkansas Supreme Court, and it was affirmed on October 12, 1970. Mayfield v. State, 249 Ark. 203, 458 S.W.2d 725 (1970). Petitioner is presently incarcerated in the Arkansas Department of Correction.

The only issue raised by this petition is identical to one of the issues raised in Mayfield's appeal in the state courts, to wit: was petitioner, a male, deprived of due process of law by the systematic exclusion of women from the jury panel. By the agreement of the parties, the case has been submitted on the record from the state courts, the pleadings in this case and briefs.

It has been admitted and stipulated by the respondent herein that the jury commissioners for the Eastern District of Carroll County systematically excluded

women from the jury panel.[1] Nonetheless, respondent states that petitioner is not entitled to relief because he lacks standing to challenge the exclusion and, further, that the exclusion of women from the jury panel was justified. Respondent relies principally on Bailey v. State, 215 Ark. 53, 219 S.W.2d 424 (1949), and Black v. State, 215 Ark. 618, 222 S.W.2d 816 (1949).

In *Bailey*, the Arkansas Supreme Court stated:

"We think that the inference deductible from the *Fay* case (Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043) is that where a state does not impose upon women as a class the inescapable duty of jury service, a defendant who complains that due process was denied, or that he was not afforded the equal protection contemplated by the Fourteenth Amendment, must show something more than continuing failure of jury commissioners to call women for jury service . . . .".

The respondent also relies on the following statement in *Fay*, supra, at p. 287, 67 S.Ct. at p. 1627: "This Court, however, has never entertained a defendant's objections to exclusions from the jury except when he was a member of the excluded class". The question of systematic exclusion of women was raised by petitioner at the opening of the trial in the Circuit Court of Carroll County, Arkansas.

In essence, the respondent argues that a defendant, not a member of the class excluded, must show some affirmative evidence of actual harm or error caused by the exclusion. The United States Supreme Court, in the recent case of Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (decided June 22, 1972), held that such an argument takes too narrow a view of the kinds of harm that flow from discrimination in the jury selection process.

*Peters* concerned a petition by a white man alleging that the systematic exclusion of blacks from the jury panel deprived him of his rights to due process and equal protection. The Court, in deciding that petitioner had standing to raise such an argument even though he was not a member of the class excluded, states:

"In short, when a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim", at p. 498 of 407 U.S., at p. 2166 of 92 S.Ct.

\* \* \* \* \* \*

" . . . the Court has also recognized that the exclusion of a discernible class from jury service injures not only those defendants who belong to

---

1. The various reasons for this decision as stated by the three commissioners are as follows:

1. (Commissioner A) : "In selecting the jurors we tried to get good honest men that we thought would make good jurors. We considered the names of women as possible jurors. (T. 220) I felt that a man was more appropriate for jury duty because of certain verbal expressions or just from the conversation that may be brought forth in the trial which might recoil a woman. As a jury commissioner I attempted to select those individuals which I believed would serve best in a jury called in Carroll County." (T. 222)

2. (Commissioner B) : "I excluded women from this panel because I was trying to save them from embarrassment; mostly, because we might have one or two on the jury and it would have to be all night and everything and we were trying to excuse women on that account." (T. 227)

3. (Commissioner C) : "I considered the qualifications quoted in the pamphlet under the paragraph entitled 'Women', when I considered women for this jury panel. We considered the following statement from the pamphlet: 'In considering a woman for jury service undertake as best you can a determination as to whether she is likely to serve.' I don't think this particular case was discussed but the fact that some facts might come up in a trial was discussed."

the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross-section of the community", at p. 500 of 407 U.S., at p. 2167 of 92 S.Ct.

\*   \*   \*   \*   \*   \*

"If it were possible to say with confidence that the risk of bias resulting from the arbitrary action involved here were confined to cases involving Negro defendants, then perhaps the right to challenge the tribunal on that ground could be similarly confined. The case of the white defendant might then be thought to present a species of harmless error.

"But the exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases", at p. 503 of 407 U.S., at pp. 2168–2169 of 92 S.Ct.

\*   \*   \*   \*   \*   \*

"When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that their exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented", at p. 503 of 407 U.S., at p. 2169 of 92 S.Ct.

■ Although *Peters* concerned a white man challenging the exclusion of blacks from the panel, it is clear that the rationale of the Supreme Court in that case applies to a man challenging the exclusion of women. At page 504 of 407 U.S., at p. 2169 of 92 S.Ct., the Court states in footnote 12:

"In rejecting, for the federal courts, the exclusion of women from jury service, this Court made the following observations, which are equally relevant to the exclusion of other discernible groups:

"The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded. Ballard v. United States, 329 U.S. 187, 193–194 [, 67 S.Ct. 261, 91 L.Ed. 181] (1946)."

Respondent further contends that here the exclusion of women from jury service was justified. He relies primarily on the fact that since under Arkansas law women cannot be compelled to serve on juries,[2] it would as a practical matter be futile to place them on the panel because they would choose not to serve. In addition, it is urged that the service of women on jury panels would pose practical problems with respect to separate accommodations, etc. It is the finding of this Court that the above-enumerated practical problems do not outweigh the rights of an accused to a fair trial before a jury drawn from a panel that reflects a representative cross-section of the community nor can such practical problems justify the deprivation of said rights.

■ It should be pointed out that petitioner does not challenge the Arkansas law permitting women, at *their* option, to excuse themselves from jury service, nor does this Court reach or consider that issue. It is the holding of this Court that the systematic exclusion of women is impermissible and cannot be justified on the basis that once selected, many, if not all, of those selected might elect to be excused from jury service.

In accordance with this Memorandum Opinion, an order will be entered this

---

2. Ark.Stats.Ann. § 39–112 provides: "No woman shall be compelled to serve on a jury against her will".

date granting the petition for a writ of habeas corpus and ordering respondent to remand petitioner to the custody of the Carroll County Circuit Court for such further proceedings as may be directed by that court.[3]

3. Prior to the decision in Peters v. Kiff, supra, there was a conflict of authority with respect to the issue of standing. The Arkansas Supreme Court denied petitioner's appeal on the basis of their prior decisions, which, until the decision in Peters, represented the majority view. Normally, this Court would require the petitioner to present the issue to state courts again in the light of the recent United States Supreme Court decision. However, since this Court had taken the case under submission prior to the decision in Peters and since application to the state courts for post-conviction relief would be time-consuming, both for the petitioner and the state courts, the relief mandated by Peters will be granted without further delay.