**UNITED STATES ex rel. Brodie Byron DAVIS, Petitioner-Appellant,**

v.

**C. Murray HENDERSON, Warden of Louisiana State Penitentiary, Respondent-Appellee.**

No. 72–2611.

United States Court of Appeals,
Fifth Circuit.

March 8, 1973.

James J. Gleason, III, New Orleans, La., for petitioner-appellant.

William J. Guste, Jr., Atty. Gen. of La., Baton Rouge, La., Gilbert T. Brown, Jr., Asst. Dist. Atty., J. Carl Parkerson, Dist. Atty., Monroe, La., for respondent-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from a denial of a petition for a writ of habeas corpus. Finding that petitioner's allegations concerning the composition of the grand and petit juries that indicted and tried him should be re-investigated in light of Peters v. Kiff, 1972, 407 U.S. 493, 92 S. Ct. 2163, 33 L.Ed.2d 83, we vacate in part and remand.

Petitioner, Brodie Byron Davis, a white man, was found guilty of murder on November 21, 1958, in the Fourth Judicial District Court for Ouachita Parish, Louisiana, and the jury fixed his penalty at death. His conviction and sentence were affirmed by the Louisiana Supreme Court. State v. Davis, 237 La. 577, 111 So.2d 778 (1959). A subsequent petition for state habeas corpus relief alleging that petitioner was entitled to a full, free transcript of his trial for use on appeal was found insufficient to warrant the exercise of the supervisory jurisdiction of the Louisiana Supreme Court. State ex rel. Davis v. Henderson, 252 La. 475, 211 So.2d 333 (1968).

Petitioner first filed the application for federal habeas corpus relief that is the subject of this appeal on March 20, 1968.[1] On August 19, 1971, after conducting an evidentiary hearing, the District Court permanently enjoined the State of Louisiana from executing peti-

tioner because the petit jury that convicted him had been selected in a manner that violated Witherspoon v. Illinois, 1968, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776.[2] The District Court, however, rejected petitioner's claim that he was entitled to a new trial. United States ex rel. Davis v. Henderson, D.W. D.La.1971, 330 F.Supp. 797. On this appeal, petitioner urges that the District Court erred in rejecting his petition because: (1) evidence seized pursuant to an illegal arrest had been introduced at his trial; (2) he had been denied the use of a full, free transcript of his trial for the purpose of appeal, and therefore he had been unable to prove that he had been denied a fair trial under Louisiana law by the prosecutor's improper references to his failure to take the stand; (3) the petit jury that convicted him had been selected in violation of *Witherspoon*, denying him a fair trial; and (4) the grand and petit jury that indicted and convicted him were not selected from a cross-section of the community. We find that petitioner's first three contentions are without merit but that his fourth point requires a remand for further proceedings.

I

Petitioner contends that the District Court erred in rejecting his petition because evidence seized pursuant to an illegal arrest had been introduced at his trial. After examining the record before us, we find that petitioner's contention is without merit.

Petitioner next asserts that at his trial the prosecutor made improper remarks to the jury concerning petitioner's failure to testify at his trial and that he has been unable to prove that this violation of Louisiana law[3] oc-

1. Petitioner's application had been delayed by various difficulties, which are discussed in the opinion of the District Court appearing at 330 F.Supp. 797.

2. The State of Louisiana does not appeal from the District Court's grant of injunction relief.

3. Petitioner does not contend that the prosecutor's reference violated the federal law as enunciated at that time since petitioner's trial occurred prior to Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, which forbids reference to a defendant's failure to testify in

curred only because he was not provided with a complete transcript of his trial despite the fact that he was an indigent and was unable to pay for a full transcript. This Court has previously discussed and approved Louisiana's procedure of providing only a transcript of testimony explicitly preserved by the reservation of a bill of exceptions. Mack v. Walker, 5 Cir. 1966, 372 F.2d 170. Petitioner failed to make such a bill of exceptions and thus cannot be heard to complain that he has not been provided a full, free transcript to prove that the prosecutor made improper remarks.

■ We also find untenable petitioner's contention that the exclusion from the jury that convicted him of all persons conscientiously opposed to capital punishment warrants the setting aside of his conviction. Witherspoon v. Illinois, *supra*, held that no death penalty imposed by a jury so constituted could be carried out, but the Supreme Court refused to ". . . announce a per se constitutional rule requiring the reversal of every conviction returned by [a jury selected in violation of its standards] . . . ." 391 U.S. at 518, 88 S.Ct. at 1775, 20 L.Ed.2d at 782. Furthermore, the Court stated in Witherspoon that "[t]he data adduced by the petitioner . . . are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of

guilt." 391 U.S. at 517, 88 S.Ct. at 1774, 20 L.Ed.2d at 782 (footnotes omitted). Petitioner has not presented this Court with convincing evidence that federal due process has been violated by the finding of guilt made by a jury constituted in violation of Witherspoon v. Illinois and his point must fail.[4]

## II

Petitioner's final contention is that his conviction cannot stand because the grand and petit juries that indicted and convicted him were not selected from a cross-section of the community. Petitioner raised this issue for the first time at his federal habeas corpus hearing when he presented statistical evidence that the following conditions existed during the period when he was convicted:

(1) 32.2% of the population of Ouachita Parish was non-white;

(2) 96% of all prospective jurors were also registered voters; and

(3) total voter registration was 22,755, of which only 776, or less than 4%, were blacks.

Petitioner urges that these figures support an inference that blacks were systematically or arbitrarily excluded from jury service.[5]

The District Court held:

Here there is no evidence of systematic exclusion or inclusion or invidious discrimination of any kind. Accept-

his own behalf, but which is non-retrospective. Tehan v. United States, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453. Petitioner does contend, however, that because Louisiana law at the time of the trial forbade such prosecutorial references, State v. Bentley, 219 La. 893, 54 So.2d 137 (1951), the failure of the State to provide him with a complete transcript with which to prove the existence of the alleged remarks denied him equal protection of the law under Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891.

4. Petitioner argues, however, that Louisiana law mandates a new trial when an individual is convicted by a jury selected in

a manner violative of *Witherspoon*, State v. Turner, 253 La. 763, 220 So.2d 67 (1969), because such a jury denied a defendant a fair and impartial trial. State v. Benjamin, 254 La. 49, 222 So.2d 853 (1969). We find that this issue is now controlled by State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971), and that in the light of that case, petitioner's contention is without merit.

5. The evidence concerning the racial composition of the voter registration lists was submitted subject to an objection that race was not an issue because petitioner did not have standing to challenge the exclusion of blacks from the grand and petit juries.

ing *arguendo* that the allegations are true with respect to the type of persons selected for jury service, we find here no deprivation of constitutional rights in the jury selection process and the State's composition of the Grand and Petit Juries in this case was not constitutionally infirm. It should be especially noted that Davis is Caucasian, as were the jurors.

United States ex rel. Davis v. Henderson, 330 F.Supp. at 801. The District Court rendered this opinion on August 19, 1971, apparently relying on previous Fifth Circuit decisions such as Mosley v. Smith, 5 Cir. 1968, 404 F.2d 346, and Peters v. Kiff, 5 Cir. 1971, 441 F.2d 370, in denying the claim of petitioner, a white man, that his constitutional rights were violated by an indictment and conviction rendered by unconstitutionally selected grand and petit juries. Subsequent to the District Court opinion, however, the Supreme Court reversed our decision in Peters v. Kiff.

In Peters v. Kiff, 1972, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83, a white man sought for the first time on his habeas corpus petition to have his conviction set aside because blacks had been systematically excluded from the grand and petit juries that indicted and convicted him. The Fifth Circuit, relying on Mosley v. Smith, *supra*, held that a white man's constitutional rights are not violated by the exclusion of blacks from grand and petit juries. Peters v. Kiff, *supra*, 441 F.2d at 371. The Supreme Court reversed, holding that a white man has standing to challenge the arbitrary exclusion of blacks from the grand and petit juries that indicted and convicted him, and that if such allegations are proved, the indictment and conviction rendered by such unconstitutionally selected juries cannot stand.

In reviewing the record, we are not fully convinced that blacks were arbitrarily or systematically excluded from the grand and petit juries that indicted and convicted petitioner. The statistics presented by petitioner do, however, speak louder than the mere denial by the state that there was systematic exclusion of blacks from grand and petit jury venires. *See* Brooks v. Beto, 5 Cir. 1966, 366 F.2d 1; Black v. Curb, 5 Cir. 1970, 422 F.2d 656; Muniz v. Beto, 5 Cir. 1970, 434 F.2d 697. If the grand and petit jury lists were chosen substantially from voting lists or other compilations not representative of a cross-section of the general community, petitioner's claim merits relief. Rabinowitz v. United States, 5 Cir. 1966, 366 F.2d 34; Mayfield v. Steed, E.D.Ark.1972, 345 F. Supp. 806, aff'd, 8 Cir. 1973, 473 F.2d 691. Petitioner's presentation of adequate proof of his claim was undoubtedly encumbered by the District Court's correct interpretation of our subsequently overruled prior decisions. Therefore, in light of the State of Louisiana's assertion at oral argument that subsequent to petitioner's trial a federal examiner was appointed to oversee the voting lists of Ouachita Parish, and in light of the statistics that petitioner did present concerning the composition of the grand and petit juries, we think that petitioner should be given an opportunity to more fully develop his contention.[6]

Petitioner is entitled to a full hearing concerning his contention that the grand and petit juries that indicted and convicted him were improperly constituted. However, we think it clear that petitioner's evidentiary hearing should most appropriately be conducted in the Louisiana Courts. Petitioner has not presented this claim to the Louisiana Courts either on appeal or by habeas

6. Petitioner also contends that the grand and petit juries that indicted and convicted him were improperly constituted because individuals of higher economic and social classifications were overrepresented on the grand and petit jury venires.

Without reaching the constitutional dimension of petitioner's claim, we hold that the statistics adduced by petitioner are insufficient to support a contention of arbitrary or systematic economic discrimination.

corpus petition. The procedure advocated in Spencer v. Wainwright, 5 Cir. 1968, 403 F.2d 778, is fully applicable to the case at hand:

> "In the interest of comity we must as to all of the issues now asserted, put the fact finding and law finding responsibility squarely on the . . . [State] Courts where, initially at least, it belongs. We do not intimate even a possible whisper of a hint of a suggestion as to how these contentions will be resolved. However, in the setting of this case, they are extremely serious and warrant appropriate judicial inquiry and determination. The remedy prescribed and open-mindedly administered by the . . . [State] Courts will afford . . . [petitioner] an opportunity to present his contentions adequately and fully develop them in evidentiary hearings as required."

403 F.2d at 781; *see also* Williams v. Henderson, W.D.La.1971, 330 F.Supp. 795. Of course, if after exhausting his state remedies, petitioner remains dissatisfied, he "can [then] return to the Federal Court for its inescapably independent judgment on federal issues." Peters v. Rutledge, 5 Cir. 1968, 397 F.2d 731, 741; Spencer v. Wainwright, *supra*, 403 F.2d at 782.

Petitioner's statistics here may be only facially probative of his contention that blacks were arbitrarily or systematically excluded from Ouachita Parish grand and petit jury venires, and we claim no cybernetic finality for them. However, the statistics do have sufficient coloration to warrant a thorough examination to determine if they are more than skin deep. They may be explained, but not ignored. The dismissal of the writ of habeas corpus is therefore affirmed in part and vacated in part, and the District Court is directed to follow the procedures it adopted in Williams v. Henderson, *supra*.

Affirmed in part, vacated in part, remanded with instructions.