UNITED STATES of America,
Appellee,

v.

James Earl GRANT, Jr.

No. 72–1700.

United States Court of Appeals,
Fourth Circuit.

March 2, 1973.

Before WINTER, CRAVEN and FIELD, Circuit Judges.

## ORDER

Upon careful consideration of the petition for rehearing, with the concurrence of Circuit Judge CRAVEN, the petition is denied. Circuit Judge WINTER would grant the petition to rehear for the reasons stated in his dissent.

WINTER, Circuit Judge (dissenting):

Further study of this case, occasioned by Grant's petition for rehearing with a suggestion for rehearing in banc, persuades me that we should grant rehearing. I therefore dissent from denial of the petition.

The point warranting further consideration is the racial composition of the panels from which the district-wide grand jury, which indicted, and the Raleigh Division petit jury, which convicted, were chosen. Both exhibited substantial discrepancies from the black population in the communities from which they were drawn and both appear to have been chosen in violation of The Jury Selection and Service Act of 1968, 28 U.S.C.A. §§ 1861 et seq. It is true that Grant, himself black, was indicted by a grand jury and convicted by a petit jury on which there was black representation roughly comparable to the black representation of the communities from which they were drawn, but Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) would seem to stand for the proposition that standing to challenge jury selection procedures does not require a showing of particular prejudice to the defendant.

The jury plan for the Eastern District of North Carolina provides that grand juries shall be chosen from the lists of actual voters of the political subdivisions within the district and petit juries from the lists of actual voters of the political subdivisions within the division. The plan contains no provision for access to secondary sources "in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 [the right to juries selected at random from a fair cross section of the community and the right not to be excluded from jury service on account of race, color, religion, sex, national origin, or economic status] . . ." § 1863(b)(2).

Statistics are available to show the 1960 and 1970 census figures for population, by race, in the district and in the division, and statistics are available to show registered voters, by race, in both. These figures demonstrate that, *in the district*, blacks represented from 31.9% to 34.8% of the population but only 20.9% of the registered voters. *In the division*, blacks represented from 27% to 23.8% of the population and only 17.2% of the registered voters.

Of course the jury plan depended not on registered voters, but on actual voters for the selection of jurors, and no statistics are available to show actual voters by race. However, certain substitutes are available, and they unfortunately demonstrate that the discrepancies between the percentages of blacks of the total population and the percentages of blacks among registered voters were extended and magnified. With regard to the *district*, a 1969 sample of 20% of the list from which grand jurors were chosen showed only 14.5% black representation and a 1971 report to the Administrative Office showed only 21.89% non-white names selected and only 18.-23% non-white potential grand jurors actually reporting, from which the grand jury was selected. This, in a district

where the black population was from 31.9% to 34.8%.

With regard to the *division*, where blacks represented from 27% to 23.8% of the population, a 1971 sample from the jury wheel showed only 12.94% non-whites with only 12.90% non-whites reporting for selection. An actual count of potential jurors for the period 1/26/71 to 2/14/72 shows that of those actually reporting, only 14.41% were non-white and of those completing their questionnaires and eligible to serve, only 11.22% were non-white.

It seems to me that when, as these figures would indicate, the black underrepresentation on the list from which the grand jury was drawn was between one-third and one-half of the total black population, and the black underrepresentation on the list from which the petit jury was drawn was approximately one-half of the total black population, it can hardly be said that these juries were drawn from a fair cross section of the community in the district or division as § 1861 guarantees. I would grant rehearing and proceed not only to consideration of the specific relief to which defendant was entitled, but also to what modifications to the jury plan should be required to make it accomplish the objectives of the Act.