Charles William Henry **WITHERS**,
Petitioner,

v.

**J. D. COX**, Superintendent Virginia State
Penitentiary (now A. E. Slayton, Jr.),
Respondent.

Civ. A. No. 71–C–83–D.

United States District Court,
W. D. Virginia,
Danville Division.

Oct. 24, 1973.

Charles Withers, pro se.

William P. Robinson, Jr., Asst. Atty.
Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Circuit Judge, sitting by
designation.

The petitioner was sentenced to life
imprisonment November 19, 1968 in the
Corporation Court of the City of Danville
on account of conviction after trial by
jury for breaking and entering a dwell-
ing house in the nighttime with intent
to commit rape.

This petition for habeas corpus pre-
sents two questions:

A. Negroes were systematically ex-
cluded from the grand jury which in-
dicted petitioner and the petit jury
which tried petitioner.

B. Persons with conscientious objec-
tion against imposing the death pen-
alty were excused from jury service.

To dispose of the second ques-
tion first. Since the petitioner was not
sentenced to death, but to life imprison-
ment, he is entitled to no relief on ac-
count of excusing the jurors who had

moral scruples against the death penalty. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

■ The question of black people on the grand jury may similarly be disposed of without extended discussion. There were seven people assigned to grand jury service. No claim is made that there was any conscious inclusion or exclusion of black people from the grand jury. Of the seven people chosen for grand jury service, two were black, or 28.6%. As a matter of fact, only six served on the grand jury, of which two were black, or 33.3%. As hereinafter explained, since the most recent census of Danville shows the percentage of black population is not more than 22% of those persons 21 years of age and older, the percentage of black persons on the grand jury was higher than that demanded by the rule announced in Stephens v. Cox, 449 F.2d 657 (4th Cir. 1971). No disparity existing in the number of black persons on the grand jury as compared to their numbers in the general population of Danville above the age of 21 years, and no claim being made or evidence being offered of actual discrimination in the selection of the grand jury, petitioner is entitled to no relief on that account.

The third question, that of discrimination in the selection of the petit jury, requires a more extended discussion. This case is an extension of the case of Hope v. Peyton, 340 F.Supp. 197 (W.D. Va.1972). The method of selecting jurors is described in detail in *Hope*, and the record here shows there has been no change. In addition, in *Hope*, the jury list, made up by the jury commissioners in February, 1968, was examined in detail for the March, May, and July terms of the Corporation Court. In the instant case, no proof was made or offered of the composition of juries in any term

of court other than the November term in which the petitioner here was tried. It is quite necessary, however, to consider the percentage figures of blacks and whites on the jury in question in the November term in connection with the juries from the previous terms of the court, which were drawn from the same master list prepared in February, 1968. As will be shown, the figures for the November term are not significantly different from the figures in the other terms of court, and while the percentage of black persons on juries in Danville during 1968 is not mathematically and precisely the same as those in the general population 21 years of age and older, there is no significant difference.

Those jurors receiving a summons to attend the trial here in question were 32 in number, of which six were black, or 15.6%.

When these jurors are added to all the other jurors drawn from the same list, it is seen that the percentage of black persons receiving summons for jury service in Danville, which was found in *Hope* to be 19.6%, is now 19.4%, a reduction of only two-tenths of one percent.

The following table explains the matter better than words:

Jurors receiving summons as veniremen during the March, May, July, and November 1968 terms of court. Names drawn from the list in question.

|  | March Term | May Term | July Term | November Term |
|---|---|---|---|---|
| White | 32 | 49 | 38 | 26 |
| Black | 11 | 6 | 12 | 6 |
| Total | 43 | 55 | 50 | 32 |
| % Black | 25.6 | 11.1 | 24.0 | 15.6 [1] |

Black people expressed as percentage receiving summons as veniremen for 1968 terms of court: 19.4%

1. The State judge held an *ore tenus* hearing and found that of 32 persons on the list receiving a summons, six were black. His oral findings are reduced to writing and reported in the transcript, so those figures are acceptable as the existing facts. 28 U.S.C. § 2254(d). A closer analysis, which admittedly involves some speculation, would seem to show that at least three and possibly four of the names on the list of 32 are duplications. Assuming there were in fact 29 names on the list, and one of the duplications was black, this would give 17.3% black instead of 15.6%.

It must be emphasized that those parts of the *Hope* opinion relating to the percentage of blacks and whites on juries and also relating to the method of selecting juries are equally applicable here.

As found in *Hope*, and discussed there in detail, the 1970 census shows for the entire City of Danville a black population of 22.4%. For people 25 years of age and over, the population is 20.0% black. The census indicates that the younger the population the greater percentage of black persons, and the finding of the court from the census figures in *Hope* that not more than 22% of the total population of Danville 21 years of age and over is black is repeated here. The total number of persons receiving a summons to appear for service as a petit juror in Danville (for which figures are available) during 1968 is 180. Of those 180 persons, 35 were black, or 19.4%. The percentage of black persons, then, receiving a summons to serve on petit juries in Danville during 1968 is only 2.6% off from a mathematically precise figure using 22%, which is giving petitioner the benefit of any doubt.

■ In the opinion of the court, this 2.6% difference is not a substantial disparity as described in *Stephens*, so that no *prima facie* case is made of racial discrimination in the selection of Danville juries commencing with the jury list prepared in February, 1968. Again, no proof was offered of any actual discrimination in the makeup of the list. Indeed, all the proof is to the contrary. The fact that the percentage of black persons called for jury service is so nearly the same as the percentage of pre-

sumptively qualified black persons in the general population is, in the opinion of the court, corroborating proof that discrimination did not in fact exist. If the population figures for those persons 25 years of age and over are used instead of interpolating the census figures, the disparity would be only six-tenths of one percent, a negligible figure taken in any context.

■■ The preparation of jury lists by race with mathematical precision is not required by the Constitution. Neither is it necessary to include a member of any race on a jury panel. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

There is no positive indication of discrimination in this case. No mark on any list indicates race. No list which was segregated in advance was used to select the jury. No color key of any kind was used. The absence of any presumption of discrimination such as that outlined in *Stephens*, coupled with the absence of any positive indication of discrimination, leads the court to its opinion that the list involved here, in fact, was not racially discriminatory. The court has also considered, among other cases, Hairston v. Cox, 459 F.2d 1382 (4th Cir. 1973); Witcher v. Peyton, 382 F.2d 707 (4th Cir. 1967); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 1 L.Ed.2d 536 (1972); United States v. DiTommaso, 405 F.2d 385 (4th Cir. 1968); and United States v. Grant, 475 F.2d 581 (4th

As the State judge pointed out, there is no evidence as to how many of the list of twenty were black, and no attempt was made to prove this by the petitioner. Again, piecing together the testimony as best possible with the record, it appears that at least three of twenty were black, or a minimum of 15%. For this reason, no attempt is made to collate the body of this opinion with the table on page 202 of the opinion in *Hope*. But if the figures for this case are added with those of the table on p. 202 of the opinion

in *Hope*, the black people serving on lists of twenty from which juries were impaneled for all the 1968 juries in Danville, for which figures are available, is 78 out of 400 or 19.5%.

Also, an examination of the exhibits shows 64 persons were drawn for jury duty (65 were stipulated), of which the testimony is that 13 were black (this may be as low as 10; the record is uncertain). The percentage of black persons drawn, then, is between 20.3% and 15.6%.

Cir. 1973), and is of opinion that the petitioner is not entitled to relief.

An order is this day entered consistent with this opinion.