Irwin Brownstein, J.
Defendant moves to challenge the panel from which a jury in his cáse will be selected, pursuant to CPL 270.10.
CfL 270.Í0 (stibd. 1) provides., that an objection made to the entire panel of. prospective trial jurors may be taken only by a defendant and exclusively upon the ground that there has been such a departure from the requirement of the Judiciary Law in the drawing or return of the panel as to result in substantial prejudice to the defendant. Subdivision 2 of that section provides that such a challenge to the panel must be in writing setting forth the facts constituting the challenge and prejudice and, if such facts are denied by the People, a hearing must be conducted.
The thrust of defendant’s motion is that a petit jury chosen from a panel assembled with statutory exemptions having, been granted to women violated his rights .to due process and to the equal protection clauses of the Federal and State Constitutions.
Section 599 of the Judiciary Law provides that, although’ qualified, a woman is entitled to exemption from service as a juror upon claiming the exemption. It is universally accepted that under this exemption a woman need state absolutely no reason for the exercise of her exemption and, indeed, is not required to. Upon her statement at any time before being impaneled that she wishes to exercise her exemption, she may do so.
It is well established that the Sixth Amendment right to a jury trial -is guaranteed to State criminal defendants by the, Fourteenth Amendment (Duncan v. Louisiana, 391 U. S. 145). A defendant’s right to a jury trial necessarily includes a jury, drawn from a panel which contains a representative cross section of the community.
“ The unmistakable import of this Court’s opinions, at least since 1940, Smith v. Texas [311 U. S. 128] and not repudiated by intervening decisions, is that the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury *635 trial.” (Taylor v. Louisiana, 419 U. S. 522, 528.)
_ Although there is no constitutional requirement that any particular petit jury fairly reflect the makeup of the community, it is now constitutionally mandated that juries be drawn from panels which dp reflect a representative cross section of the community (Apodaca v. Oregon, 406 U. S. 404; Taylor v. Louisiana, supra).[1]
In Taylor, the Supreme Court declared unconstitutional a Louisiana statute, which, like the New York Judiciary Law, granted an automatic exemption from jury service to women, solely on the basis of sex. Women wishing to serve as jurors were required to file a written notice to that effect. Under the Louisiana system, “. only a very, few women, grossly disproportionate to the number of eligible women in the community ”> were called for jury service (Taylor v. Louisiana, supra, p. 525). The court therefore treated the impact of the exemption as tantamount' to a systematic exclusion of women from'jury panels. Justice White, speaking for the eight-man majority, stated:
“ Although this judgment may appear a foregone conclusion from the pattern of some Of the Court’s cases over the past 30 years, as well as from legislative developments at both federal and state levels, it is nevertheless true that until today ,no case had squarely held that the exclusion of women from jury venires deprives a criminal defendant of his Sixth Amendment right to a trial by an impartial jury drawn from a fair cross section of the community. * * *
“ Accepting as we do, however, the view that the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community, we think it is no longer tenable to hold that women as a class may be excluded or given automatic exemptions based solely on sex if the consequence is that criminal jury .venires are almost totally male.” (Taylor v. Louisiana, supra, pp. 535, 537.)
Taylor and the cases cited therein make it clear that~the pertinent inquiry in this case is whether the statutory system under which jury panels are assembled results in a large distinctive *636 group, women being substantially underrepresented on such panels as compared to their actual numbers in the community.
‘ ‘ Our notions of what a proper jury is have developed in harmony with our basic concepts of a democratic society and a representative government * * # Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial and should be sturdily resisted ’ (Glasser v. United States, 315 U. S. 60, 85-86.)
Although the New York Judiciary Law makes it easier than did the Louisiana statute for women to serve as jurors if they so desire, the New York .statutory system nevertheless results in jury panels on which women are substantially underrepresented in proportion to their actual members in the population. Pursuant to the mandate of the Judiciary Law, this court conducted a brief hearing which consisted of receiving statistics provided by the County Clerk.2
The statistics provided are uncontested and are, of course, binding upon the court as a formal judicial admission. The significance of these statistics is demonstrated in three separate areas, the first of which is that men and women are notified to be examined as to their qualifications as jurors on an equal basis. The same number of men and women are requested to provide information as to their qualifications. Following the examination of the jurors, the statistics show that more men are qualified than women. Clearly, this is because of the women’s exemption. What is of greater significance is that the number of men summoned is nearly five times the number of women summoned, this being the case in the last half of 1974. In the fiscal period 1969 to 1970, almost 15 times the number of men were summoned for jury duty than were women.
It appears that the reason for the great disparity between those qualified and those summoned is the present makeup of the jurors’ pool consisting of a list of jurors who have qualified over the years, deducting therefrom those who have died *637 or become otherwise incapacitated or otherwise disqualified, including women who, after qualification, decided they wished to exercise their exemption.
It is noteworthy that the efforts by the County Clerk to secure a pool or panel of jurors representing a fair cross section of the community is defeated by the existence of the women’s exemption for a long period of time.
Under the circumstances, it cannot be said that a fair cross section of the community is represented on the jury panels nor is it possible, presently, to obtain one. Inasmuch as, under Taylor, the presence of a fair cross section of the community on panels from which petit jurors are drawn is essential to the fulfillment of the Sixth Amendment guarantee of impartial jury trial in criminal cases, defendant would be deprived of this right if he were to be tried before a jury selected pursuant to subdivision 7 of section 599.
Defendant contends also that subdivision 7 of section 599 of the Judiciary Law violates the equal protection clause of the Constitution because it establishes an exempt classification based solely on sex. This contention is worthy of consideration.
The equal protection clause of the Fourteenth Amendment has historically been invoked to protect various groups from discrimination by statutory classification. Recently, the Supreme Court has articulated new approaches to determine the constitutionality of statutory classification challenged under the Fourteenth Amendment.
If a statute creates a classification which is ‘ ‘ inherently suspect ”, or if a statute deals with “fundamental rights ”, the classification will be subject to strict judicial scrutiny and a showing by the ¡State of a compelling State interest will be necessary to justify the use of the classification (Frontiero v. Richardson, 411 U. S. 677; O’Neill v. Dent, 364 F. Supp. 545 [1973]).
In the Frontiero case, four Justices of the Supreme Court found that sex was an inherently suspect classification.
‘ ‘ Classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subjected to strict judicial scrutiny ”. (Frontiero v. Richardson, supra; p. 688; see, also, Matter of Sontag v. Bronstein, 33 N Y 2d 196; People ex rel. Watts v. Watts, 77 Misc 2d 178; People v. Hamilton. N. Y. L. J., Dec. 26, 1974, p. 15, col. 8.)
Subdivision 7 of section 599 of the Judiciary Law, by granting a categorical exemption from jury service to all women, *638 solely because of their sex, has created a classification which is inherently suspect and which therefore subjects the statute to “ strict scrutiny.”.'
An alternative basis which requires this court to apply the strict scrutiny test to the statutory exemption is that the statute deals with fundamental rights — the right to serve on a jury and the right to trial by jury itself.
“ Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in thé fairness of the criminal justice system. Restricting jury /service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial.” (Taylor v. Louisiana, supra, p. 530; see, also, Strauder v. West Virginia, 100 U. S. 303; Smith v. Texas, 311 U. S. 128; Glasser v. United States, 315 U. S. 60; Thiel v. Southern Pacific Co., 328 U. S. 217; Ballard v. United States, 329 U. S. 187; Williams v. Florida, 399 U. S. 78; Peters v. Kiff, 407 U. S. 493.)
Thus, both because the Judiciary Law utilizes an inherently suspect classification and because it deals with fundamental rights, this court must subject the statute to the strict scrutiny test. The State therefore has the burden of showing that the use of the classification is required by a compelling State interest.
The only compelling State interest which could be offered as a justification for the exemption is that the care of young children would be neglected if women, like men, were required to serve on juries. Such an argument requires acceptance of the pr§mise that the overwhelming majority of women are occupied with home and family responsibilities to such an extent that the societal interest in the care of children would suffer if women were required to serve on juries. In 1975, this anachronistic view of the role of women in society is totally without foundation.[3]
*639 If New York’s compelling State interest was solely the care of young children, then the statutory classification could have been defined in terms which would have been rationally related to achieving that gpal. An exemption could have been granted to persons, men or women, who were actually so occupied.[4]
At one time it was' successfully argued that women, as the “ center of home and family life ” should be1 exempted from jury service since their “ special responsibilities ’’ would result in burdensome applications to be excused from such jury service (Hoyt v. Florida, 368 U. S. 57). This notion, which underlay the New York statutory exemption and the cases which have upheld it, has now clearly been rejected by the Supreme Court’s overruling of Hoyt in Taylor v. Louisiana. The court concluded that statistical evidence “ put[s] to rest the suggestion that all women should be exempt from jury service based solely on their sex and the presumed role in the home ” (n. 17).
“ It is untenable to suggest these days that it would be a special hardship for each and every women to perform jury service or that society cannot spare any women from their present duties” (Taylor v. Louisiana, supra, pp. 534-535).
The historical justification for relegating women to an inferior status, based upon a rigid and empirically unsupported view of a single social role for women, is no longér valid or acceptable.
The State has not met its burden under the strict, scrutiny test, because there is no compelling State interest which requires the exemption of women from jury service solely by reason of sex.
*640 In People v. Hamilton (N. Y. L. J., Dec. 26, 1974, p. 15, col. 8), my learned colleague, the Honorable Peter McQuillan, acknowledged that the New York Judiciary Law’s ‘ ‘ arbitrary discrimination based solely on sex has no place in a democratic society ” and urged the Legislature and Executive to take prompt action to amend, the Judiciary Law; However, he declined to invalidate subdivision 7 of section 599, relying on McKinney’s Statutes (McKinney’s Cons. Laws of N. Y., Book 1, § 150, pp, 312-313), which states, in part, that a trial court must act with extreme constraint and that unconstitutionality must be shown beyond a reasonable doubt before a statute is nullified.
If reasonable doubt as to the unconstitutionality of subdivi-. sion 7 of section 599 existed at the time of Judge McQuillan’s opinion, that doubt has been eliminated by the Supreme Court’s decision in Taylor v. Louisiana, Moreover, the excerpt from McKinney’s Statutes quoted and relied upon in Hamilton also states that a court of first instance should declare an act of the Legislature unconstitutional in those “ rare cases involving life and liberty and where the invalidity of the act is apparent on its face * .* * Where the consequences may be severe and the damage irreparable, the lower court should not hesitate to determine the constitutionality of a statute ” (McKinney’s Statutes, supra, p. 313).
The consequences will be “ severe and the damage irreparable ” if this defendant must risk his liberty by being tried by a jury drawn from a panel which has been assembled in a manner which does not conform to constitutional requirements.
“ In light of the great potential for harm latent in an unconstitutional jury-selection system, and the strong interest of the criminal defendant in avoiding that harm, any doubt should be resolved in favor of giving the opportunity for challenging the jury to too many defendants, rather than giving it to too few ” (Peters v. Kiff, 407 U. S. 493, 504, supra).
Tn view of the decision in Taylor v. Louisiana and in view of the grave risks to which any defendant in a criminal trial is exposed, permitting this statute to stand merely upon the hope that the Legislature and Executive will act would not serve the interests of justice.
Subsequent to' the decision in Taylor v. Louisiana (supra), the United States Supreme Court held, in Daniel v. Louisiana (420 U. S. 31), that the effect of the Taylor decision is not to be applied retroactively to convictions obtained by juries impaneled prior to the date of that decision. Clearly, the same impact must, exist in this case. It is this court’s judgment that the effec* *641 of the Taylor decision and of this decision will, affect no case unless a motion has been made pursuant to the appropriate provision of the CPL.
More specifically, it is clear that a defendant who pleads guilty has waived a jury trial and the consequent right to raise this objection. Moreover, a defendant who wishes to waive his challenge upon this ground may do so and go to trial with whatever jurors are available.
For the reasons set forth in this decision, the court finds the women’s exemption from jury service to be in contravention of law and directs that the motion of the defendant for a panel which fairly represents a cross section, he granted.

. The fact that the defendant in this cáse is not a woman does, not prevent him from asserting his claim, " When a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim.” (Peters v. Kiff, 407 U. S. 493, 498. See, also, Taylor v. Louisiana, supra).

. Figures, based on the 1970 United States Census show that in New York State at least 42% of all women between the ages of 18 and 64 were in the labor force, 38% of all married women, and 46% of all single, widowed, divorced or separated women were in the labor force. More than 35% of all New York mothers with children under 6, and 48% of mothers with children between 6 and 17, were in the labor force in 1970 (Women Workers in New York, 1970, Report of the, U. S. Dept, of Labor, Employment Standards Administration, Women’s Bureau). More recent statistics for the United States as a whole indicate that the trend to increased participation by women in the work force continues to accelerate. As of October 1974, 54.2% of all. women between 38 and 64 were in.fhe labor force. In March 1974, 45.7% of United States women *639 with children under 18 were in the labor force, and 67.3% of widowed, divorced or .separated mothers with' children between 6 and 17 were in the work force. (Taylor v. Louisiana, supra, p. 535, n. 17). “In 1940, almost half the women in the labor force were single and only 30 percent were married; in 1970, about 20 percent were single and 60 percent were married. Over these three decades, the labor force participation rate of married women rose from 15 to 41 percent and the rate of mothers with children under six, from 9 to 30 percent. (May, 1974, Monthly Labor Review, Reprint 2964, Where Women Work.)

. In 1974, the New York State Legislature did, in fact, pass new Judiciary Law provisions dealing with jury selection, including -an attempt to provide an exemption not to “ A woman ” but tó “ A parent, guardian of other person who resides with and i! legally charged with the care and custody of a child or children under sixteen years of age, and who is actually and personally engaged in the daily supervision and care of such child or children during a majority of the hours between 8 a.m. and 6 p.m. .Hours of supervision and care shall be deemed to include any period of time during which such child or children attended school”. (Proposed Sec. 513 subd. 6. [S. 8254; A. 9721]. The entire bill, including this provision, was vetoed [Memorandum No. 254.)

Examination Notices Qualified Jurors Jurors Summoned Fiscal Year* Male Female Total Male Female Total Male Female Total 1969- 1970.......... 18,378 18,116 36,494 6,584 2,616 9,200 59,772 4,553 64,325 1970- 1971.......... 24,813 23,528 48,341 8,479 2,962 11,441 59,448 6,102 65,550 1971- 1972 .......... 28,607 26,993 55,600 9,022 4,760 13,782 62,762 7,288 70,050 1972- 1973 .......... 31,641 30,277 61,919 9,848 5,049 14,897 58,917 9,008 67,925 1973- 1974.......... 54,500 54,500 109,000 10,937 6,773 17,710 66,834 12,816 79,650 7/1/74 to 12/31/74.. 27,061 31,139 58,200 5,911 3,780 9,691 31,119 6,931 38,050