# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Dwight B. Brickhouse

Case No. F-79-0837

By JUDGE EDWARD L. RYAN, JR.

June 12, 1979

The narrow question for decision is as to who shall make the search of certain records.

On preliminary motion the defendant challenges the jury selection system of the Commonwealth of Virginia under the Sixth and Fourteenth Amendments of the United States Constitution, i.e., systematic exclusion of an age group in violation of cross-sectional requirements, citing *Duren* v. *Missouri*, [439 U.S. 357], 47 L.W. 4089 (1979). On May 30, 1979, this court entered an order requiring the Sheriff of the City of Norfolk to produce and make available information as to (1) total number of jurors reporting for service between December 1, 1978, and May 30, 1979; (2) the number of persons between the ages of eighteen and twenty-two reporting during said period; and (3) the total number of exemptions claimed under subparagraph 6 of § 8.01-341.1 of the Code of Virginia.

The Sheriff of the City of Norfolk maintains complete records, in the Clerk's Office of this court, that are source material for answers to defendant's inquiries and invites the defendant and his attorney to inspect same. But, says the Sheriff, there is no duty on him to research the records and deliver the distillate to

the defendant. The defendant's response is that he is not qualified to complete the research and being indigent cannot retain and compensate someone to perform the work for him. (Chief Deputy Sheriff S. B. Levenson testified at a hearing on June 6, 1979, and estimated that the search of the records would require two days' work by two of the Sheriff's deputies.)

Rule 3A:14(b)(1) "permit(s) the accused to *inspect* and *copy* or *photograph*. . . written reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the accused."

Rule 3A:14(b)(2) "permit(s) the accused to *inspect* and *copy* or *photograph* designated books, papers, documents, tangible objects, buildings or places."

Patently, no provision is made for production of veniremen records. If provided for, an accused would have no greater privilege than to inspect, copy or photograph. (See also Rule 3A:15(b) as to "production" of Documentary Evidence and of Objects.)

Art. VII, § 4, of the Constitution of Virginia provides for the office of sheriff in the localities whose duties shall be as prescribed by general law or special act. The duty of the sheriff in notifying jurors is provided for in Code § 8.01-353. As a corollary of such duty the sheriff maintains records.

Because of his poverty the accused has been allowed to defend without paying fees or costs and has been assigned an attorney, pursuant to Code § 14.1-183. This section provides that this accused "shall have. . . from all officers, all needful services and process, without any fees to them therefor."

The Court concludes that the Sheriff shall make available to counsel all records pertinent to the inquiry; that the Sheriff shall give counsel any needful explanation as to the contents of the records and sources of information; and that counsel himself shall make the actual or mechanical search of the records. The Attorney for the Commonwealth may make provision for such oversight as he deems necessary to insure the tabular correctness of the statistical findings.

## June 15, 1979

The Court wishes to correct the conclusion of paragraph 3 of page 2 of its letter of June 12, 1979.

It seems apparent that Rule 3A:14(b)(2) *does* provide, generally, for production of the records sought by the accused. The records are in the control of the Commonwealth.

## July 11, 1979

The Court is met at the outset with defendant's motion to quash any jury panel drawn and affected by "Subparagraph 6 of § 8.01-341.1 of the Code of Virginia[1] since the same deprives the Defendant of his right to trial by an impartial jury of citizens of the City of Norfolk as guaranteed him by the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, § 8, of the Constitution of the State of Virginia."

In large measure, the defendant relies on the principles and reasoning of *Duren* v. *Missouri*, [439 U.S. 357], 47 L.W. 4089, 27 Cr. L. 3037 (1979). Under the jury system in Texas, women were provided an automatic exemption from jury service. Statistically, juries in Jackson County, Missouri, averaged less than fifteen women in every one hundred jurors. The Supreme Court held that such systematic exclusion violates the cross-sectional requirement for juries under the Sixth Amendment. Citing *Taylor* v. *Louisiana*, 419 U.S. 522 (1975), the court repeated that one of the requisites to establish a prima facie violation of the fair section requirement is a showing that the group alleged to be excluded is a *"distinctive"* group in the community; therefore, the initial issue in the case at bar appears to be: Are professors, tutors, and pupils a "distinctive" group within the community.

With respect to the first part of the prima facie test, *Taylor* without doubt estab-

[1] Section 8.01-341.1. Who may claim exemptions from jury service. -- The following may claim exemptions from serving on juries in civil and criminal cases. . . . (6) All professors, tutors and pupils of public or private institutions of learning, while such institutions are actually in session.

lished that women "are sufficiently numerous and distinct from men" such that "if they are systematically eliminated from jury panels, the Sixth Amendment's fair-cross-section requirement cannot be satisfied."

In 1972 the Supreme Court banned the exclusion of a "substantial and identifiable class of citizens" and also spoke of "any large and identifiable segment." *Peters v. Kiff*, 407 U.S. 493, 502-04 (1972).

Courts may freely take judicial notice of the federal census or those taken under state laws. 14 Am. Jur. 2d, "Census," § 12. Knowing that women represent approximately 50 percent of the population, the Supreme Court was required to hold that they "are sufficiently numerous and distinct from men" and also represent a "substantial, large and identifiable class of citizens." Women are distinct in physiognomy, voice, appearance and purpose. The philosophers and poets have addressed this distinctiveness since the beginning of recorded time.

Professors, tutors and pupils, on the other hand, are relatively indistinct. They may be of any age, sex, creed, color or place of origin. There is no evidence that they are so numerous or large as to constitute a distinctive group. Nor are they, *per se*, identifiable.

It follows, therefore, that this Court should overrule defendant's motion to quash the jury panel. In so doing, the Court draws support from the following from *Taylor*:

> Our holding does not augur or authorize the fashioning of detailed selection codes by federal courts. The fair cross-section principle must have much leeway in application. The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community. . . . Rawlins v. Georgia, supra, (201 U.S. 638), and other cases, recognized broad discretion in the States in this respect.

(N.B. *Rawlins* holds that the states are free to grant exemptions to individuals in case of special hardship

or where uninterrupted occupational pursuit is critical to community welfare.)