### CORNETT v. CITY OF MIAMI, et al
Case No. 79-453 (22)
Eleventh Judicial Circuit, Dade County
January 22, 1981

Greg Gaebe, and William Huggett, for plaintiff.

Steven A. Edelstein, Asst. City Attorney, for defendant, City of Miami.

WILKIE D. FERGUSON, JR., Circuit Judge

Plaintiff alleges several points as error in support of his Motion for New Trial. One of those grounds in considered. The other are found to be without merit.

In this case the plaintiff, a young black man, sues to recover the injuries sustained when the defendant, a white police officer, shot him in the back at the end of a foot chase. Plaintiff has been left totally paralyzed below the waist.

This trial commenced shortly after verdicts had been returned in two other much publicized cases. In the later of the two cases, the county's school superintendent, a black, was indicted, suspended from office, then convicted of grand theft. The Superintendent was tried before an all-white jury after a number of blacks had been challenged peremptorily. In the earlier case, an all-white jury acquitted several white officers of murder and manslaughter charges in the beating death of a black insurance agent—the infamous "McDuffie Case". All prospective black jurors had been challenged, some for cause, most peremptorily. Moments following the verdict in that case there was a civil disturbance in the community resulting in millions of dollars of property damage and several deaths. Those killed included whites and blacks, and in a few instances the motives were clearly racial. Judicial notice is taken of these background circumstances as they shed light on community tensions in general at the time of this trial and the probable effect on the conduct of this trial. Some white prospective jurors admitted that they couldn't be fair. At least one admitted to being fearful and asked to be excused.

At the pre-trial conference the parties were limited to four challenges each. Afterwards the venire was seated with four blacks among their number. Counsel for the plaintiff then approached the bench to voice a premature objection to the defendant's exercise of his peremptory challenges to remove black members of the venire. The objection was raised again during the jury selection process and again after the last challenge had been exercised. As was predicted by plaintiff, defense counsel exercised each of its four peremptory challenges against blacks thereby insuring an all-white jury. The objections were eventually overruled without a hearing.

As one ground in support of the Motion, plaintiff contends essentially that because of an improper exercise of the peremptory challenge by the defendant he was deprived of a fair and impartial trial by a jury which included members of his ethnic group. Plaintiff concedes that he is aware of no case law in the state supportive of his argument. Other jurisdictions have addressed the question in criminal cases.

In *Commonwealth v. Soares*, 387 N.E.2d 499 (1979), the Supreme Judicial Court of Massachusetts acknowledged that persons of any identifiable group may harbor similar points of view which bear on the issues in a particular type of case. But, added the court at page 515:

> It is this very diversity of opinion among individuals, some of whose concepts may well have been influenced by their group affiliations, which is envisioned when we refer to 'diffused impartiality'. No human being is wholly free of the interests and preferences which are the product of his cultural family, and community experience. Nowhere is the dynamic commingling of the ideas and biases of such indivduals more essential than inside the jury room.

The same rationale should have equal application in civil trials. The potential for misuse of the peremptory challenge to exclude minority members of the community is similarly present. The impact of the tactic could be serious, especially in racially sensitive cases. The *Soares* court so alluded at page 516:

> Given an unencumbered right to exercise peremptory challenges, one might expect each party to attempt to eliminate members of those groups which are predisposed toward the opposition. However, when the defendant is a minority member, his attempt is doomed to failure. The party identified with the majority can altogether eliminate the minority from the jury, while the [minority] is powerless to exclude majority members since their number exceeds that of the peremptory challenges available. The result is a jury in which the subtle group biases of the majority are permitted to operate, while those of the minority have been silenced.

The misuse of the peremptory challenge to eliminate identifiable groups contributes to an undermining of the integrity of the justice system. Unquestionably there are cases where the outcome of the trial has been determined by the composition of the jury—with results contrary to the weight of the evidence. The existence of such an unimpared ability to manipulate the outcome of a trial is a legitimate reason for doubt as to fairness. It then becomes the responsibility of the court to minimize that potential for abuse by imposing some reasonable limitations on the exercise of the challenge. This is essential if the community is to have confidence in the jury trial process. The facts, the issues raised, and the timing of the trial are circumstances which in combination made this case an extremely sensitive one. The appeal to biases were more overt than subtle, though not necessarily the doings of counsel.

A prima facie case of systematic exclusion of a cognizable group had been established when defendant used all of his peremptory challenges to eliminate all blacks from the venire. At the very least the court was obligated to shift the burden to the defendant to show that his challenges were not used to exclude solely on the basis of race. This would have required a hearing outside the presence of the venire. Such a procedure has been adopted in Massachusetts, (*Commonwealth v. Soares*, supra) and California (*People v. Wheeler*, 583 P.2d 762). The Supreme Court of the United States has long since held that it was a violation of the due process clause to systematically exclude from jury service any identifiable segment of the community. *Peters v. Kiff*, 407 U.S. 493; *Thiel v. Southern Pacific Co*, 328 U.S. 217; *Taylor v. Louisiana*, 419 U.S. 522. If the identifiable group may still be excluded from sitting as jurors to hear and decide cases, then the constitutional principle guaranteeing the call to service is a nullity.

For the reasons stated the Motion for New Trial is GRANTED.

The issues raised by the Motion are presently of utmost community concern. An appeal is invited.