Emmanuel MITCHELL, a/k/a Tulinagwe
Zakiya Thandiwe, Plaintiff,

v.

Jack MORGAN, et al., Defendants.

No. 3:89–0372.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 25, 1994.

400

the reasons stated below, the Court denies plaintiff's motions.

## I. BACKGROUND

Emmanuel Mitchell ("Mitchell") filed suit against several prison guards and the warden and associate warden of Tennessee State Penitentiary under 42 U.S.C. § 1983. Mitchell alleged that his Eighth and Fourteenth Amendment rights were violated by the use of or the authorization of the use of excessive force against him and by his placement in an unsanitary prison cell. The case was tried to a jury, which found in favor of the defendants.

## II. DISCUSSION

### A. Motion For a New Trial

Mitchell asserts that allowing the verdict to stand would be a miscarriage of justice because the verdict is against the weight of the evidence. *See King v. Davis,* 980 F.2d 1236, 1237 (8th Cir.1992). Further, plaintiff contends that the trial was procedurally flawed because of the admission of certain evidence, the composition of the pool from which the jury was chosen, and the jury instructions. (Docket Entry No. 131 at 13–16, 17, 18–19.) The Court rejects both of plaintiff's arguments.

The Court may grant a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure if the verdict is against the weight of the evidence, *Duncan v. Duncan,* 377 F.2d 49 (6th Cir.1967), *cert. denied, Fain v. Duncan,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967), if the judge determines that the jury's findings of fact are clearly erroneous, *United States v. United States Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), or if the trial was procedurally unfair, *General Am. Life Ins. Co. v. Central Nat'l Bank of Cleveland,* 136 F.2d 821, 822–23 (6th Cir.1943) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940)).

Here, a reasonable jury could weigh the evidence and conclude that defendants'

Emmanuel Mitchell, Riverbend Maximum Security Institution, for plaintiff.

Mary G. Moody, Atty. Gen. Office, Nashville, for defendants.

#### MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court is plaintiff's motion for a new trial (Docket Entry No. 131) and plaintiff's motion to amend motion for a new trial (Docket Entry No. 132). Plaintiff moves this court to grant a new trial and enter default judgments against defendant Oscar E. Denning and defendant Jarius Johnson. Upon review of the record and for

actions were justifiable and that plaintiff did not meet his burden of proof. This is what the jury did. Mitchell would have this Court reinterpret the evidence and substitute its reasoning for that of the jury. The Court is precluded from doing so. In deciding whether to grant a new trial it is not within the Court's discretion to reweigh the evidence and grant a new trial because it would have made different conclusions. *King*, 980 F.2d at 1237. The standard is whether there has been a miscarriage of justice. *Id.* The Court finds that the verdict for defendants was supported by the evidence and that no miscarriage of justice has occurred. Hence, this Court upholds the jury's verdict.

■ Mitchell's motion for a new trial is also based on his contention that prejudicial and hearsay evidence were admitted at trial. (Docket Entry No. 131 at 13–16.) Specifically, Mitchell argues that Defendant's Exhibit 1, a prison memorandum dated August 22, 1988, should have been excluded. Mitchell asserts that because the memorandum states that he threw urine at prison officials on July 7, 1988, the evidence prejudiced the jurors as to the events of July 5, 1988, the date when Mitchell was allegedly beaten and placed in an unsanitary cell. Further, Mitchell argues that the memorandum is hearsay.

The Court rejected Mitchell's objections at trial and rejects them on his motion for a new trial. The Court concludes that exclusion of the prison memorandum under Rule 403 of the Federal Rules of Evidence would have been unwarranted. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." In balancing the probative value of the evidence against its potential to prejudice, the Court concluded that the memorandum would not have a tendency to suggest to the jury a decision on an improper basis. *See* Fed.R.Evid. 403, advisory committee's note. The memorandum's report of events on July 7, 1988 would not necessarily lead the jury to conclude that the defendants were not involved in unconstitutional conduct on July 5, 1988. The Court, having reconsidered plaintiff's objection, maintains its decision to admit the memorandum.

■ As to Mitchell's allegation that the memorandum was hearsay, the Court finds otherwise. The prison memorandum is a business record and as such is an exception to the hearsay rule. Fed.R.Evid. 803(6). The Court concludes that the memorandum was properly admitted as evidence.

■ Mitchell bases his motion for a new trial in part on his challenge to the jury that was selected to decide his case. (Docket Entry No. 131 at 17.) Subsequent to voir dire and in open court, Mitchell moved to stay the proceedings asserting that the jurors were selected from a venire that was racially unrepresentative. Mitchell did not object to defense counsel's striking of Black jurors. The judge denied the motion and the jury ultimately decided in favor of defendants. The jury that decided Mitchell's case was chosen from a venire of twenty persons, of which one was Black. The jury that was ultimately impaneled in the case consisted of six White jurors. Mitchell repeated this objection in his motion.

■ The Court interprets Mitchell's motion as an allegation that the Jury Selection and Service Act, 28 U.S.C. § 1861 to § 1878, was violated in that the selection of the jury was racially discriminatory. The Jury Selection and Service Act (the "Act") is the statutory scheme for jury selection in the district courts. Section 1861 is a broad policy statement that informs the entire Act: "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community ..."[1] Further, the Act forbids discrimination based on race, color, religion, sex, national origin, or economic status, 28 U.S.C. § 1862, and requires each district court to implement a written plan for the random selection of jurors and to achieve the goals of sections 1861 and 1862. 28 U.S.C. § 1863.

The procedures for challenging jury selection on the ground of substantial noncompli-

---

1. The constitutional "fair cross requirement" is not as broad as this statutory provision. *See* *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

ance with the Act are outlined in § 1867(c) as follows:

> In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

The meaning of the time limitations of the Act are clarified by the legislative history. The House Report on the Jury Selection and Service Act of 1968, Pub.L. No. 90–274, § 101, 82 Stat. 59 states: "Subsections (a), (b), and (c) specify that challenges must be offered before the voir dire begins. And if the challenging party discovered, or in the exercise of diligence could have discovered, the grounds for the challenge earlier, the challenging motion must be made within 7 days of that earlier date." H.R.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 1792, 1805. Case law also supports the view that statutory challenges must be made before voir dire. *See United States v. Young,* 570 F.2d 152, 153 (6th Cir.1978) (holding that requirements of the statute are strictly enforced and challenges raised for the first time on appeal are untimely).

The Court concludes that because Mitchell's attack on the validity of the jury selection process was made subsequent to voir dire, his challenge is time-barred. Although Mitchell did raise his challenge in court, he did not do so in the time required by the statute, thus the question is foreclosed.

■ Although Mitchell is barred from making a statutory challenge, he is not precluded from asserting a constitutional claim to the jury selection process. Section 1867(e) provides in part:

> Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, ...

*See United States v. De Alba–Conrado,* 481 F.2d 1266, 1269–70 (5th Cir.1973) ("forfeiture of the statutory claim in no way affects the sanctity of a defendant's due process right to be tried by a jury drawn from a fair cross section of the community"). The Court will now address Mitchell's constitutional claim.

In *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), a personal injury action against a corporation, the Supreme Court addressed the requirement that juries be representative:

> The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographic groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups.

*Id.,* 328 U.S. at 220, 66 S.Ct. at 985–86 (citations omitted). *Thiel* was based on the predecessor to the Act and was not based on the Constitution. In fact, the narrow question before this Court, whether a civil plaintiff has a Fifth Amendment right to a petit jury drawn from a fair cross section of the community, has not been addressed by the Supreme Court.

■ As a plaintiff in a civil suit challenging a federal jury selection process, Mitchell's claim that the process was improper is based on the Due Process Clause of the Fifth Amendment and not on the Sixth and Fourteenth Amendments, which could be relied upon if he were a criminal defendant attacking a state scheme for jury selection. *See, e.g., Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) (holding that a statute granting women an automatic exemption from jury service violative of the fair cross section requirement of the Sixth Amendment); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (systematic exclusion of women during the jury selection process denies a criminal defendant his right under the Sixth and Fourteenth Amendments to a petit jury drawn

from a fair cross section of the community); *Avery v. Georgia*, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953) (racial discrimination in selection of petit jurors is violative of criminal defendant's right to equal protection under the Fourteenth Amendment); *Smith v. Texas*, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940) (holding that a Black criminal defendant indicted by a grand jury from which Blacks were systematically excluded had been denied Fourteenth Amendment's guarantee of equal protection of the law). The Supreme Court's extensive jurisprudence on the Sixth Amendment right of a criminal defendant to a fair trial reveals the significance it attributes to procedural safeguards when one's life or liberty is at stake. *See, e.g. Taylor*, 419 U.S. at 529, 95 S.Ct. at 697 ("the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a fair trial").

 The Fifth Amendment is where the concepts of due process and equal protection merge and makes applicable to the federal government the Equal Protection Clause of the Fourteenth Amendment. The standard applied in resolving discrimination cases against the federal government is the same as that used in deciding equal protection claims against the states. *Bolling v. Sharpe*, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–95, 98 L.Ed. 884 (1954). In *Bolling* in applying the Fifth Amendment to hold that public school segregation in the District of Columbia violates equal protection and due process, the Supreme Court concluded that:

> [T]he concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process.

*Id.*, 347 U.S. at 499, 74 S.Ct. at 694.

In examining Mitchell's claim under the Due Process Clause of the Fifth Amendment, the Court applies the reasoning and rationale expressed by the Supreme Court in the context of Sixth Amendment jury claims. The Court holds that under the Due Process Clause of the Fifth Amendment a civil litigant has a right to a jury chosen from a fair cross section of the community. The Court concludes that just as it is unfair for a criminal defendant to be tried by a jury that has not been chosen from a fair cross section of the community, it is equally unfair for the fair cross section requirement to be unfulfilled in a civil trial.

 *Duren* held that a criminal defendant has a right to a jury chosen from a fair cross section of the community and enumerated the elements needed to establish a prima facie violation of the cross section requirement. The test requires the defendant to show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Id.*, 439 U.S. at 364, 99 S.Ct. at 668.

 Although the case at bar is a challenge by a plaintiff in a civil case and not a criminal defendant, the Court is persuaded that the *Duren* test should apply. The legitimacy of the courts is based on the absence of bias as well as on the appearance of fairness and inclusiveness. The risk of actual bias is increased and the appearance of fairness is compromised if juries are selected through unconstitutional procedures, whether the dispute is a criminal trial or a civil suit. *Peters v. Kiff*, 407 U.S. 493, 503–04, 92 S.Ct. 2163, 2168–69, 33 L.Ed.2d 83 (1972) (holding that the indictment and conviction of a White criminal defendant could not stand if Blacks were systematically excluded from the grand jury and the petit jury).

 Here, Mitchell is required to prove the second and third prongs of the *Duren* test. Mitchell need not prove the first prong of the test, that Blacks are a distinctive group in the community, as the Supreme

404

Court has held such. *See, e.g. Alexander v. Louisiana*, 405 U.S. 625 at 630, 92 S.Ct. 1221 at 1225, 31 L.Ed.2d 536 (1972) (holding that petitioner made out a prima facie case of racial discrimination where number of Blacks eligible to serve on the grand jury was disproportionately reduced during a racially biased selection process); *Carter v. Jury Comm'n of Greene County*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (holding that Blacks excluded from juries based on their race have standing to challenge a jury selection process).

■■■ As to the second element, Mitchell has not provided the Court with any evidence to prove that the venire was unrepresentative in light of the number of Blacks in the Nashville Division of the Middle District of Tennessee. Venirepersons in this division are chosen randomly from voter registration lists and driver's license lists from Davidson County. Administrative Order No. 79, Jury Plan of the U.S. District Court Middle District of Tennessee, October 16, 1988. Mitchell has merely claimed that the venire was unrepresentative without indicating to the Court why more than one Black person should have appeared in the venire. More than mere numbers must be provided to conclude that a group has been systematically excluded as potential jurors. *See Alexander*, 405 U.S. at 630, 92 S.Ct. at 1225 (holding that prima facie case of racial discrimination in selection of grand jurors is shown by a factual inquiry in each case).

■■■ Mitchell has also not addressed the third prong of the *Duren* test. Plaintiff has not alleged that the underrepresentation of Black persons in the venire was the result of systematic exclusion; Mitchell merely claimed that the venire was unrepresentative. *See Carter*, 396 U.S. at 327, 338, 90 S.Ct. at 522, 528 (where Blacks are majority their mere absence from the jury commission did not constitute a prima facie case of discriminatory exclusion). The mere fact that the venire from which the petit jury was selected in Mitchell's case only included one Black person is insufficient to establish a due process violation.

■■■ Although due process under the Fifth Amendment mandates that petit juries in civil cases be drawn from a representative cross section of the community, such a right does not guarantee Mitchell to a representative jury for his trial. The right only entitles Mitchell to a process that is not infected with discriminatory exclusion and randomly selects potential jurors from a source that is fairly representative of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (stating such as the fair cross section requirement for criminal defendants). Inevitably, random selection will result in venires that are less representative than others. Such results do not contravene the right to due process. A constitutional violation occurs only if such underrepresentation is inherent in the procedure employed to select venirepersons and as such is systematic exclusion of a particular group. *Duren*, 439 U.S. at 366, 99 S.Ct. at 669.

In *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), in holding the racially discriminatory use of peremptory challenges in civil trials unconstitutional, the Supreme Court recognized that racial discrimination in the judicial process is especially problematic because of the unique role courts play in our society:

> [T]he injury caused by discrimination is made more severe because the government permits it to occur within the courthouse itself. Few places are a more real expression of the constitutional authority of the government than a courtroom, ...
>
> Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the ideal of democratic government from becoming a reality.

*Id.*, 500 U.S. at ——, 111 S.Ct. at 2087 (citations omitted).

■■■ Moreover, racial discrimination is impermissible in any courtroom proceeding. "A civil proceeding often implicates significant rights and interests. Civil juries, no less than their criminal counterparts, must follow the law and act as impartial factfin-

ders.... Racial discrimination has no place in the courtroom, whether the proceeding is civil or criminal." *Id.* at ——, 111 S.Ct. at 2088 (citing *Thiel,* 328 U.S. at 220, 66 S.Ct. at 985–86).

Applying the *Duren* test, the Court holds that Mitchell has failed to prove a violation of the fair cross section requirement.[2] Hence, the Court denies plaintiff's motion for a new trial on that basis.

■ Mitchell also takes issue with the Court's charge to the jury. (Docket Entry No. 131 at 18–19.) At the close of trial, Mitchell orally requested that the jury instructions include the standard for an Eighth Amendment violation as articulated in *Hudson v. McMillian,* —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Mitchell did not offer a specific instruction at that time. The Court gave Mitchell a copy of the jury charge for his review prior to the jury's deliberations. Mitchell failed to promptly object to the jury charge and states such in his motion: "Even though before this Honorable Court [sic] read the instruction to the Jury [sic], this Court did in fact ask myself and defendants counsels [sic] did we have any objections to the Jury Instructions [sic] and I said no." (Docket Entry No. 131 at 18.)

■ Under Rule 51 of the Federal Rules of Civil Procedure,[3] a party is required to object to the jury instructions in a timely matter. Objections made after the jury has returned a verdict are untimely and will not be considered on a motion for a new trial. The purpose of the requirement to timely object is to enable the Court to correct error in the instructions before the case is submitted to the jury. *Moore v. Stephens,* 271 F.2d 119, 120 (6th Cir.1959).

In the case at bar, Mitchell did not object to the jury charge at the appropriate time.

The Court concludes that plaintiff's challenge to the jury instruction is barred as untimely and will not consider this objection on his motion for a new trial.

## B. Default Judgment Against Defendant Oscar E. Denning

■ Mitchell moves this Court to enter default judgment against Oscar E. Denning ("Denning") because he did not appear at trial. (Docket Entry No. 132 at 3.) Upon Mitchell's motion for default judgment at the conclusion of all proof in the trial, the Court denied the motion. Mitchell alleged that Denning was in a group of prison guards that placed him in an unsanitary prison cell. Mitchell did not assert that Denning acted separately or independently of his co-defendants. Consequently, where the jury found the remaining defendants not guilty, to avoid an inconsistent outcome the Court's denial of default judgment against Denning was appropriate. *See Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872); J. Moore, 6 *Moore's Federal Practice* ¶ 55–06, at 55–48 to 55–49 (2d ed. 1985) ("*Frow* stands for the narrow rule that a default judgment may not be entered against one of several defendants (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, ...."). If the Court were to grant default judgment against Denning the result would be a finding fully inconsistent and irreconcilable with the jury's verdict. Mitchell's claim alleged concerted action on the part of the defendants. Because plaintiff failed to show that Denning's co-defendants acted unconstitutionally, it necessarily follows that Denning did not act unconstitutionally. The Court upholds its decision to deny default judgment against Denning.

---

2. Mitchell has failed to establish a prima facie case of racial discrimination. Had he made out a prima facie case, the burden of proof would switch to the Clerk of the Nashville Division of the Middle District of Tennessee to show that the jury selection procedures are permissibly race neutral.˙ *See Alexander,* 405 U.S. at 631–32, 92 S.Ct. at 1226. The Clerk could be joined in this action as a necessary party pursuant to Rule 19(a)(1) of the Federal Rules of Civil Procedure.

3. Rule 51 of the Federal Rules of Civil Procedure 51 provides in part:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

### C. Default Judgment Against Defendant Jarius Johnson

Mitchell also moves this Court to enter default judgment against Jarius Johnson ("Johnson"). (Docket Entry No. 132.) The Court granted summary judgment on behalf of Johnson in its Order dated November 5, 1993. Hence, the Court denies as moot plaintiff's motion.

### CONCLUSION

Based on the aforementioned analysis, the Court denies plaintiff's motions. An Order consistent with this memorandum is filed herewith.

### *ORDER*

Pending before the Court in the above-captioned case is plaintiff's motion for a new trial (Docket Entry No. 131) and plaintiff's motion to amend motion for a new trial (Docket Entry No. 132).

In accordance with the reasoning set forth in the contemporaneously entered Memorandum, the Court hereby DENIES plaintiff's motions.